ORIGINAL

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Rome

DEC 0 4 2009

JAMES N. HATTEN, Clerk
By: [signature] Deputy Clerk

| | |
|---|---|
| JARROD CHARLES SLECHTA; ADAM KAHN SLECHTA; AMANDA GAIL SLECHTA; and JORDAN TURC SLECHTA and ANNA MARIE MCSWEENEY, minors, by and through their mother, CATHY KAHN DUKE, as natural guardian and next friend, | ) ) ) ) ) ) ) ) |
| · Plaintiffs, | ) ) |
| v. | ) ) ) |
| ROGER F. KAHN, individually and as Co-Trustee of the RK Trust; THE KAHN CATTLE CO., LLC, a Georgia limited liability company; LS & RK, #1, LLC, a Georgia limited liability company; LS & RK #2, LLC, a Georgia limited liability company; ASK LEASING, INC., a Georgia corporation; and WILLIAM W. GWALTNEY and JAMES UNION, as Co-Trustees and/or Interim Co-Trustees of the RK TRUST; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

CIVIL ACTION NO.

**JURY TRIAL DEMANDED
ON ALL ISSUES SO TRIABLE**

4 09-CV- 206-HLM

## COMPLAINT

COME NOW Jarrod Charles Slechta, Adam Kahn Slechta, Amanda Gail

Slechta, and Jordan Turc Slechta and Anna Marie McSweeney, minors, by and

through their mother, Cathy Kahn Duke, as natural guardian and next friend

(collectively, "Plaintiffs"), and file their Complaint against Roger F. Kahn, individually and as Co-Trustee of the RK Trust; The Kahn Cattle Co., LLC, a Georgia limited liability company; LS & RK #1, LLC, a Georgia limited liability company; LS & RK #2, LLC, a Georgia limited liability company; ASK Leasing, Inc., a Georgia corporation; and William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust (collectively, "Defendants"), stating as follows:

## PRELIMINARY STATEMENT

1.     In or about 1996, Defendant Roger Kahn defrauded Plaintiffs, his great-nieces and great-nephews, out of their inheritance interest in a liquidating land trust.

2.     In late August 2008, a jury in an action pending before this Court found Defendant Roger Kahn liable to Plaintiffs for fraud, conspiracy, unjust enrichment, and attorneys' fees.

3.     The Court entered a judgment against Defendant Roger Kahn on the jury's verdict, awarding Plaintiffs $3,527,605 in compensatory damages and attorneys' fees (the "Judgment").[1]

---

[1]     On August 28, 2008, the jury rendered a verdict in Plaintiffs' favor for compensatory damages in the amount of $1,933,626, which was later reduced to $1,789,105.17 on the motion of Defendant Roger Kahn. *See McSweeney v. Kahn*, Case No.

4.     The Judgment was affirmed, in its entirety, by the United States Court of Appeals for the Eleventh Circuit on September 10, 2009.  *See McSweeney v. Kahn*, Case Nos. 08-16196, 08-16515, 2009 WL 2893210 (11th Cir. Sept. 10, 2009).

5.     This civil action is being brought pursuant to, *inter alia*, the Georgia Uniform Fraudulent Transfer Act, O.C.G.A. § 18-2-70 *et seq.*, to challenge fraudulent transfers made by Defendant Roger Kahn to the RK Trust, a Georgia trust, of which he is the principal beneficiary and a former Co-Trustee, in an effort to further defraud, hinder, and delay Plaintiffs, his creditors, and to deny Plaintiffs the collection of their Judgment, to which they are rightfully entitled; pursuant to the Racketeer Influenced and Corrupt Organizations Act and the Georgia Racketeer Influenced and Corrupt Organizations Act, to obtain redress for damages suffered by Plaintiffs as a consequence of Defendants' fraudulent schemes; and to obtain declaratory relief, and, in particular, a declaration by this Court that (i) the spendthrift clause of the RK Trust—the beneficiary of certain of the aforementioned fraudulent transfers—is invalid, or, alternatively, that (ii) the spendthrift clause of the RK Trust is unenforceable (a) to the extent that Defendant

---

4:05-CV-00132-HLM (N.D. Ga. Aug. 28, 2008 and Oct. 9, 2008).  On August 29, 2008, the jury rendered an additional verdict of $1,729,500.00 for attorneys' fees.  *See McSweeney v. Kahn*, Case No. 4:05-CV-00132-HLM (N.D. Ga. Aug. 29, 2008).   The resulting judgments, totaling $3,527,605.00, are referred to collectively herein as the "Judgment."

Roger Kahn, as the principal beneficiary of the RK Trust, placed property belonging to him into the trust, effectively becoming a "settlor" thereof, and/or (b) to shield distributions made by or on behalf of Defendant Roger Kahn to the extent necessary to satisfy the Judgment.

## PARTIES

6.     Plaintiffs are the children of Cathy Kahn Duke, Defendant Roger Kahn's niece, and judgment creditors of Defendant Roger Kahn by virtue of the Judgment.

7.     Jarrod Charles Slechta is a citizen of the State of South Carolina, where he resides at 316 Ceasar Place, Hilton Head, South Carolina 29926.

8.     Adam Kahn Slechta is a citizen of the State of South Carolina, where he resides at 316 Ceasar Place, Hilton Head, South Carolina 29926.

9.     Amanda Gail Slechta is a citizen of the State of South Carolina, where she resides at 316 Ceasar Place, Hilton Head, South Carolina 29926.

10.     Jordan Turc Slechta and Anna Marie McSweeney are minor children who are citizens of the State of South Carolina, where they reside with their mother, Cathy Kahn Duke, at 316 Ceasar Place, Hilton Head, South Carolina 29926.  Their interests are represented by their mother, Cathy Kahn Duke, as natural guardian and next friend, who is likewise a citizen of the State of South

Carolina.

11.     Defendant Roger F. Kahn, against whom suit is brought individually and as Co-Trustee for the RK Trust, is a natural person and presently maintains his principal residence at 1002 Grand Court, Highland Beach, Florida 33487.  He may be personally served with process.

12.     Defendant The Kahn Cattle Co., LLC is a Georgia limited liability company, which maintains its principal place of business at 633 Cass Pine Log Road, Rydal, Georgia.  It may be served with process on its registered agent, Stuart Finestone, Suite 2540 Tower Place, 3340 Peachtree Road, Atlanta, Georgia 30326.  Defendant Roger Kahn is, or, at least through and until April 4, 2007, was, the sole member of Defendant The Kahn Cattle Co., LLC.

13.     Defendant LS & RK #1, LLC is a Georgia limited liability company, which maintains its principal place of business at 633 Cass Pine Log Road, Rydal, Georgia.  It may be served with process on its registered agent, Stuart Finestone, Suite 2540 Tower Place, 3340 Peachtree Road, Atlanta, Georgia 30326. Defendant Roger Kahn is, or, at least through and until April 4, 2007, was, the principal member of LS & RK #1, LLC.

14.     Defendant LS & RK #2, LLC is a Georgia limited liability company, which maintains its principal place of business at 633 Cass Pine Log Road, Rydal,

Georgia.  It may be served with process on its registered agent, Stuart Finestone, Suite 2540 Tower Place, 3340 Peachtree Road, Atlanta, Georgia 30326.  Defendant Roger Kahn is, or, at least through and until April 4, 2007, was, the principal member of LS & RK #2, LLC.

15.  Defendant ASK Leasing, Inc. is a Georgia corporation, which maintains its principal place of business at 633 Cass Pine Log Road, Rydal, Georgia.  It may be served with process on its registered agent, Stuart Finestone, Suite 2540 Tower Place, 3340 Peachtree Road, Atlanta, Georgia 30326.  Defendant Roger Kahn is the sole owner of ASK Leasing, Inc. and its Chief Executive Officer.

16.  Defendant William W. Gwaltney, against whom suit is brought as Co-Trustee and/or Interim Co-Trustee for the RK Trust, is a natural person and presently maintains his principal residence in Tallahassee, Florida.  He may be personally served with process at his law office, 2022-2 Raymond Diehl Road, Tallahassee, FL 32308.

17.  Defendant James Union, against whom suit is brought as Co-Trustee for the RK Trust, is a natural person, and presently maintains his principal residence in 506 NW Lambrusco Dr., Port St Lucie, FL 34986.  He may be personally served with process.

2709078v2

- 6 -

## JURISDICTION

18.     Defendants are subject to personal jurisdiction in this Court pursuant to 18 U.S.C. § 1965(a), as they transact their affairs in this District, and pursuant to 18 U.S.C. § 1965(b), as the ends of justice require that they be brought before this Court.

19.     In addition, Defendant Roger Kahn is a former resident of the State of Georgia, who, at times relevant to this action, maintained his residence at 633 Cass Pine Log Road, Rydal, Georgia 30171.    Defendant Roger Kahn is additionally subject to the jurisdiction of this Court because he transacts business in this State within the meaning of O.C.G.A. § 9-10-91(1), and because he has committed tortious acts and omissions in this State within the meaning of O.C.G.A. § 9-10-91(2).    Defendant Roger Kahn is engaged in activities affecting interstate commerce.

20.     Defendants The Kahn Cattle Co., LLC, LS & RK #1, LLC, LS & RK #2, LLC, and ASK Leasing, Inc. are Georgia limited liability companies and/or Georgia corporations, are registered to do business in Georgia, transact business within this State, and remain active and in good standing with the Georgia Secretary of State.    Thus, they are each subject to personal jurisdiction before this Court.

21.     Defendant William Gwaltney, against whom suit is brought as Co-Trustee and/or Interim Co-Trustee for the RK Trust, a Georgia trust, is additionally subject to the jurisdiction of this Court because he transacts business in this State within the meaning of O.C.G.A. § 9-10-91(1), and because he has committed tortious acts and omissions in this State within the meaning of O.C.G.A. § 9-10-91(2).   Defendant William Gwaltney is engaged in activities affecting interstate commerce.

22.     Defendant James Union, against whom suit is brought as Co-Trustee for the RK Trust, a Georgia trust, is additionally subject to the jurisdiction of this Court because he transacts business in this State within the meaning of O.C.G.A. § 9-10-91(1), and because he has committed tortious acts and omissions in this State within the meaning of O.C.G.A. § 9-10-91(2).   Defendant James Union is engaged in activities affecting interstate commerce.

23.     Due to the assertion of claims arising under the statutes and laws of the United States, this Court has subject-matter jurisdiction over this controversy pursuant to 28 U.S.C. § 1331.

24.     Due to the assertion of claims arising under the Racketeer Influenced and Corrupt Organization Act, this Court additionally has subject-matter jurisdiction over this controversy pursuant to 18 U.S.C. § 1965.

25.     This Court additionally has subject-matter jurisdiction over this controversy pursuant to 28 U.S.C. § 1332, because there exists complete diversity of citizenship between Plaintiffs and Defendants, and the amount in controversy involved in this action exceeds $75,000, exclusive of interest and costs.

26.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, or, alternatively, because at least one Defendant is subject to personal jurisdiction in this District.

27.     Venue is appropriate in this Division pursuant to LR 3.1, NDGa., because at least one Defendant resides in this Division, and because the activity giving rise to Plaintiffs' claims occurred, at least in part, in this Division.

## FACTS COMMON TO ALL COUNTS

### THE UNDERLYING FRAUD

28.     In or around 1994, Defendant Roger Kahn coerced Cathy Duke, Plaintiffs' mother and his niece, under threat of criminal prosecution, to execute (a) a Demand Promissory Note in the amount of $209,071 to compensate him for monies that she had inappropriately withdrawn from his accounts, and (b) a Collateral Assignment and Agreement, offering as security for the Promissory Note her inheritance interest under the Last Will and Testament of her

grandfather, Max E. Kahn.

29.     Among the inheritance interests so pledged was her expected interest in what is known as the "Swallow Hopkins Liquidating Land Trust" (the "Swallow Hopkins Interest"), which included thousands of acres of real property in and around Jacksonville, Florida, as well as proceeds and distributions flowing from the sale of such property.

30.     Thereafter, in 1996, a new trust was created, the "CKS Trust," for the benefit of Plaintiffs and their mother.  Among the assets to be placed into the CKS Trust was the Swallow Hopkins Interest.

31.     At approximately the same time that the CKS Trust was created, Defendant Roger Kahn, in conspiracy with his personal attorney, Elliot Cohen, who, at Defendant Roger Kahn's direction, also served as the Co-Trustee of the CKS Trust, demanded immediate satisfaction of the Demand Promissory Note and the Collateral Assignment and Agreement by selecting certain assets of the CKS Trust to be transferred to Defendant Roger Kahn.

32.     Among the assets Defendant Roger Kahn handpicked to be transferred to him in satisfaction of that debt was the Swallow Hopkins Interest.

33.     According to a valuation schedule prepared by Defendant Roger Kahn and his co-conspirator, Elliot Cohen, the Swallow Hopkins Interest was

ascribed a value of only $126,473.22.

34.     Based on this valuation and other representations by Defendant Roger Kahn and his co-conspirator, Elliot Cohen, Cathy Duke caused the Swallow Hopkins Interest to be transferred to Defendant Roger Kahn, reducing her debt to Defendant Roger Kahn by only the $126,473.22 value ascribed to it by Defendant Roger Kahn.

35.     This value, however, was knowingly and fraudulently understated by Defendant Roger Kahn and his co-conspirator, Elliot Cohen.  In fact, in the few years following the transfer of the Swallow Hopkins Interest to Defendant Roger Kahn, the Swallow Hopkins Interest generated distributions to Defendant Roger Kahn of several million dollars.

36.     Even as the income from the Swallow Hopkins Interest exceeded and then, ultimately, dwarfed Cathy Duke's initial indebtedness to Defendant Roger Kahn, Defendant Roger Kahn refused to return any of the Swallow Hopkins Interest's excess distributions to Plaintiffs and their mother.

37.     Thus, in late 2004, Cathy Duke was forced to retain counsel to seek a return of these excess distributions from Defendant Roger Kahn.

38.     Defendant Roger Kahn, however, remained intransigent. Accordingly, on June 20, 2005, Cathy Duke initiated suit against him, among

others, in this Court (the "Underlying Litigation").  Plaintiffs were later added as plaintiffs to that suit.

39.    Following three years of intense litigation and a three-week jury trial, the jury in the Underlying Litigation adjudged Defendant Roger Kahn liable for fraud, conspiracy, unjust enrichment, and attorneys' fees.  The Court entered a Judgment against Defendant Roger Kahn on that verdict, awarding Plaintiffs $3,527,605.00 in compensatory damages and attorneys' fees.  *See McSweeney v. Kahn*, Case No. 4:05-CV-00132-HLM (N.D. Ga. Aug. 29, 2008).  The Judgment was later affirmed, in its entirety, by the United States Court of Appeals for the Eleventh Circuit.  *See McSweeney v. Kahn*, Case Nos. 08-16196, 08-16515, 2009 WL 2893210 (11th Cir. Sept. 10, 2009).

### THE RK TRUST AND THE INCEPTION OF THE FRAUDULENT SCHEME

40.    Defendant Roger Kahn's mother, Rubye F. Kahn, created the RK Trust, a Georgia trust, on or about April 24, 1979, appointing Ronald D. Balser and Defendant Roger Kahn as Co-Trustees.  Defendant Roger Kahn is the sole lifetime beneficiary of the RK Trust.  A true and correct copy of the RK Trust Agreement is attached hereto as **Exhibit "A."**

41.    The RK Trust, today, holds assets well in excess of $50,000,000.00.

42.    From April 24, 1979 through the present, Defendant Roger Kahn has

served as a Co-Trustee of the RK Trust. In or about 2007, in the midst of the Underlying Litigation, Defendant Roger Kahn purported to delegate his authority as a Co-Trustee of the RK Trust to Defendant William Gwaltney.

43. In or about 1992, Ronald D. Balser resigned as Co-Trustee of the RK Trust, and, in his place, the RK Trust, under the control and dominion of Defendant Roger Kahn, appointed Defendant Roger Kahn's personal attorney, Elliot Cohen, to act as Co-Trustee.

44. Elliot Cohen served as a Co-Trustee of the RK Trust until on or about August 25, 2006 (after being named as a co-defendant in the Underlying Litigation). At that point, the RK Trust, again under the control and dominion of Defendant Roger Kahn, appointed Defendant Roger Kahn's personal pilot, Defendant James Union, to serve as Co-Trustee. Defendant James Union is also a debtor of Defendant Roger Kahn under a 2005 loan advanced to him by Defendant Roger Kahn in an amount in excess of $260,000.

45. In his capacity as Co-Trustee, and by virtue of his dominion over the RK Trust's remaining Co-Trustees and/or Interim Co-Trustees, Defendant Roger Kahn has exercised *de facto* control over the RK Trust's distributions.

46. Indeed, between December 31, 1998 and December 31, 2003, Defendant Roger Kahn caused the RK Trust to make over $35 million in

distributions to him above the $4.9 million in distributions required to be paid under the governing trust documents.

47.     These distributions to Defendant Roger Kahn greatly exceeded the distributions, if any, the RK Trust made to any other beneficiary.

48.     Importantly, all these distributions were expressly recognized as "Actual Distributions" by personal financial statements maintained by Defendant Roger Kahn and the RK Trust.  True and correct copies of two such statements are attached hereto as **Exhibit "B."**

49.     In or about 2001, Defendant Roger Kahn and Elliot Cohen, as Co-Trustees of the RK Trust, sought advice from Arthur Andersen respecting the possibility of making a *post hoc* "re-characterization" of the $35 million "excess distributions," described above, as "loans."   A true and correct copy of correspondence directed to Elliot Cohen, as a Co-Trustee of the RK Trust, discussing this proposed "re-characterization" is attached hereto as **Exhibit "C."**

50.     Astoundingly, the stated purposes of this "re-characterization" scheme, as documented in a December 3, 2002 memorandum prepared for Defendant Roger Kahn by Elliot Cohen, were to attempt to skirt between $13 million and $17 million in federal and state tax liability and to "[p]rotect Kahn Family assets from potential creditors of [Defendant] Roger [Kahn]."   Such

protections, according to Elliot Cohen, could include "all assets [sic] protection advantages that the Trust provides"—a reference, presumably, to the RK Trust's "spendthrift" provision.   A true and correct copy of the aforementioned memorandum is attached hereto as **Exhibit "D."**

51.    Notably, even at that time, certain of Defendant Roger Kahn's advisors expressed doubts that a *post hoc* "re-characterization" of prior distributions as "loans" could effectively shield any assets transferred to the RK Trust in ostensible satisfaction of the "loans" behind the trust's spendthrift clause.  Indeed, a memorandum prepared following one such advisor's meeting with Arthur Andersen expressly acknowledged that "putting money into [the] trust may create grantor trust problem[s]."   A true and correct copy of that memorandum, dated October 9, 2001, is attached hereto as **Exhibit "E."**

52.    Likewise, Elliot Cohen expressed his "[c]oncern" that such transfers "will cause [Defendant] Roger [Kahn] to be a Grantor of the Trust, thereby severely affecting the estate tax avoidance and asset protection advantages provided by retaining assets in trust."  (*See* Dec. 3, 2002 Memorandum, attached hereto as **Exhibit "D."**)

53.    Furthermore, this "re-characterization" scheme was calculated to leave Defendant Roger Kahn (technically) "insolvent," as his assets, even at the

times these "re-characterizations" were initially considered, were insufficient to satisfy the contemplated "debt" to the RK Trust. A true and correct copy of a February 2, 2004 memorandum prepared by Elliot Cohen's law firm acknowledging such "insolvency" is attached hereto as **Exhibit "F."**

54. In any event, despite having obtained numerous opinions instructing him on how to effect this creditor-obstructing and tax-avoidance scheme, Defendant Roger Kahn did not immediately implement the "re-characterizations" and make the transfers contemplated by his advisors. Indeed, even as late as 2003 and 2004 (prior to the initiation of the Underlying Litigation), Elliot Cohen and Defendant Roger Kahn continued to treat all distributions from the RK Trust as "outright distributions to [Defendant] Roger Kahn individually and not as advances or loans[,]" emphasizing that "[t]his is consistent with the Trust's practices these past years." A true and accurate copy of a series of emails between Elliot Cohen and Roger Kahn reflecting this treatment is attached hereto as **Exhibit "G."**

55. Instead, this ostensible "re-characterization" appears to have taken place sometime between December 2005 and 2007, following the commencement of the Underlying Litigation. In particular, it appears that Defendant Roger Kahn executed a series of backdated promissory notes in 2007, dated "[a]s of"

various dates between 1998 and 2003, to effect the purported "re-characterization." These include the following:

| DATED "AS OF" | DESCRIPTION | VALUE |
|---|---|---|
| 10.08.2001 | Promissory Note from Defendant Roger Kahn to Elliot Cohen and Defendant Roger Kahn, as Co-Trustees of the RK Trust | $400,000.00 |
| 10.17.2001 | Promissory Note from Defendant Roger Kahn to Elliot Cohen and Defendant Roger Kahn, as Co-Trustees of the RK Trust | $400,000.00 |
| 10.25.2001 | Promissory Note from Defendant Roger Kahn to Elliot Cohen and Defendant Roger Kahn, as Co-Trustees of the RK Trust | $500,000.00 |
| 10.30.2001 | Promissory Note from Defendant Roger Kahn to Elliot Cohen and Defendant Roger Kahn, as Co-Trustees of the RK Trust | $400,000.00 |
| 11.15.2001 | Promissory Note from Defendant Roger Kahn to Elliot Cohen and Defendant Roger Kahn, as Co-Trustees of the RK Trust | $400,000.00 |
| 11.06.2001 | Promissory Note from Defendant Roger Kahn to Elliot Cohen and Defendant Roger Kahn, as Co-Trustees of the RK Trust | $400,000.00 |
| 11.15.2001 | Promissory Note from Defendant Roger Kahn to Elliot Cohen and Defendant Roger Kahn, as Co-Trustees of the RK Trust | $400,000.00 |
| 12.11.2001 | Promissory Note from Defendant Roger Kahn to Elliot Cohen and Defendant Roger Kahn, as Co-Trustees of the RK Trust | $250,000.00 |
| 12.18.2001 | Promissory Note from Defendant Roger Kahn to Elliot Cohen and Defendant Roger Kahn, as Co-Trustees of the RK Trust | $500,000.00 |
| 12.26.2001 | Promissory Note from Defendant Roger Kahn to Elliot Cohen and Defendant Roger Kahn, as Co-Trustees of the RK Trust | $100,000.00 |
| 01.07.2002 | Promissory Note from Defendant Roger Kahn | $100,000.00 |

| | | |
|---|---|---|
| | to Elliot Cohen and Defendant Roger Kahn, as Co-Trustees of the RK Trust | |
| 02.06.2002 | Promissory Note from Defendant Roger Kahn to Elliot Cohen and Defendant Roger Kahn, as Co-Trustees of the RK Trust | $100,000.00 |
| 02.13.2002 | Promissory Note from Defendant Roger Kahn to Elliot Cohen and Defendant Roger Kahn, as Co-Trustees of the RK Trust | $100,000.00 |
| 02.21.2002 | Promissory Note from Defendant Roger Kahn to Elliot Cohen and Defendant Roger Kahn, as Co-Trustees of the RK Trust | $150,000.00 |
| 03.07.2002 | Promissory Note from Defendant Roger Kahn to Elliot Cohen and Defendant Roger Kahn, as Co-Trustees of the RK Trust | $200,000.00 |
| 12.31.1998 | Promissory Note from Defendant Roger Kahn to Elliot Cohen and Defendant Roger Kahn, as Co-Trustees of the RK Trust | $290,727.00 |
| 12.31.1998 | Promissory Note from Defendant Roger Kahn to Elliot Cohen and Defendant Roger Kahn, as Co-Trustees of the RK Trust | $14,259,540.00 |
| 12.31.2000 | Promissory Note from Defendant Roger Kahn to Elliot Cohen and Defendant Roger Kahn, as Co-Trustees of the RK Trust | $8,107,607.00 |
| 12.31.2002 | Promissory Note from Defendant Roger Kahn to Elliot Cohen and Defendant Roger Kahn, as Co-Trustees of the RK Trust | $3,722,161.00 |
| 12.31.2003 | Promissory Note from Defendant Roger Kahn to Elliot Cohen and Defendant Roger Kahn, as Co-Trustees of the RK Trust | $2,567,000.00 |
| 12.31.2003 | Promissory Note from Defendant Roger Kahn to Elliot Cohen and Defendant Roger Kahn, as Co-Trustees of the RK Trust | $3,453,525.00 |
| | **Total** | $36,800,560.00 |

True and accurate copies of these promissory notes, which are referred to collectively herein as the "Backdated Promissory Notes," are attached hereto as

Exhibit "H."[2]

56.    Notably, even the personal financial statements Defendant Roger Kahn caused to be submitted to FDIC-insured financial institutions were inconsistent with respect to the characterization of these alleged "loans."  A net worth statement Defendant Roger Kahn submitted to RBC Centura, a federally insured financial institution, in March 2005 represented that Defendant Roger Kahn enjoyed a net worth of $27,877,573.85.  No obligation to the RK Trust, whether in the form of "promissory notes" or otherwise, appears on the financial statement.

57.    A statement prepared in May 2006, however, purports to show that Defendant Roger Kahn had a *negative* net worth of ($1,309,832.88) as of December 31, 2005 — shortly after Plaintiffs and their mother filed suit against him.  This statement reflected, for the first time, an alleged $36,800,560.00 note payable by Defendant Roger Kahn to the RK Trust.

58.    Nevertheless, even when Defendant Roger Kahn was named as a defendant in the Underlying Litigation, he did not immediately make, and the Co-Trustees of the RK Trust did not accept, the transfers of his personal assets in

---

[2]    Despite multiple requests made in the context of post-judgment discovery following the Underlying Litigation, Defendant Roger Kahn has refused to state when these promissory notes were actually executed.

satisfaction of these alleged "loans."

59.     Those transfers would not begin to occur until 2007.

### THE FRAUDULENT TRANSFERS

60.     Plaintiff's mother, Cathy Kahn Duke, initiated the Underlying Litigation against Defendant Roger Kahn and Elliot Cohen, among others, on June 20, 2005.

61.     Initially, Defendant Roger Kahn took a surprisingly dim view of Plaintiffs' likelihood of success in that lawsuit.    His perspective apparently changed in March 2007, however, when briefing concluded on his Motion for Summary Judgment, and when, shortly thereafter, this Court denied the same.

### -LITIGATION TAKES A TURN FOR THE WORSE; THE FRAUDULENT TRANSFERS BEGIN-

62.     Prompted by an increasing awareness that the Underlying Litigation was likely to end poorly for him, Defendant Roger Kahn, upon information and belief, retained, and then, directed Defendants James Union and William Gwaltney, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, to cause, Daniel L. Britt, Jr., Esq., a lawyer located in Marietta, Georgia, to send letters to Defendant Roger Kahn calling the Backdated Promissory Notes due.   True and correct copies of those letters, dated March 6, 2007 and April 4, 2007, are attached hereto as **Exhibits "I" and "J,"** respectively.

63.     Incredibly, Defendants James Union and William Gwaltney, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, did not even attempt to mask the fact that their aim in calling the Backdated Promissory Notes due was to shield Defendant Roger Kahn's assets from creditors.  Nor did they attempt to hide the fact that Plaintiffs were the very creditors Defendants were attempting to hinder, delay, and defraud by virtue of these transfers.

64.     Rather, the letters expressly stated that they were being sent in regard to the Underlying Litigation, identifying the Underlying Litigation by name and case number on the "Re:" line.   Immediately after making this reference to the Underlying Litigation, the letters went on to state that:

> It should come as no surprise, [*sic*] that both serving trustees of the RK Trust, Jim Union and William W. Gwaltney agree that your current situation renders the trust insecure with regard to the funds loaned or advanced by the trust to you.

(*See* **Exhibit "I."**)

65.     These letters also acknowledged that Defendant Roger Kahn was, and would remain, (technically) insolvent as a consequence of the transfers. Indeed, the April 4, 2007 letter stated that, "Based upon a recent schedule of your assets[,] there will likely be a shortfall" between the assets Defendant Roger Kahn owned and those necessary to pay off his ostensible "indebtedness."  (*See*

Exhibit "J.")

-THE ENTITY AND NOTES RECEIVABLE TRANSFERS-

66.    With suspicious expediency, Defendant Roger Kahn, *the same day the second letter was sent*, purported to transfer millions of dollars worth of assets owned by him, personally, to the RK Trust in ostensible satisfaction of the Backdated Promissory Notes.

67.    Among the assets so transferred was Defendant Roger Kahn's exclusive ownership interest in, *inter alia*, Defendant The Kahn Cattle Co., LLC. For years, Defendant Roger Kahn had infused millions of dollars into Defendant The Kahn Cattle Co., LLC, and had exerted total control over the entity.

68.    The assets transferred (collectively referred to herein as the "Entity and Notes Receivable Transfers"), along with their stated values, are listed below:

| DATE | ASSET TRANSFERRED | VALUE |
|---|---|---|
| 04.04.2007 | Membership interest in the Kahn Cattle Company, LLC | $7,398,430.95 |
| 04.04.2007 | Membership interest in Fairpoint, LLC | $4,578,071.84 |
| 04.04.2007 | Membership interest in LS & RK #1, LLC | $5,189.49 |
| 04.04.2007 | Membership interest in LS & RK #2, LLC | $800,000.00 |
| 04.04.2007 | Andrew Kahn – Note Receivable | $250,000.00 |
| 04.04.2007 | Rick Camp – Note Receivable | $45,453.61 |
| 04.04.2007 | Suzie Hembree – Note Receivable | $198,688.56 |
| | **Total** | **$13,275,834.45** |

69.     Upon information and belief, certain of these represented values were intentionally understated, such that Defendant Roger Kahn would remain (technically) "insolvent" after the transfers were made.

70.     For example, and by way of illustration only, in the preceding years, Defendant Roger Kahn had ascribed a value to his interest in Defendant The Kahn Cattle Co., LLC at upwards of $13,000,000 (as opposed to $7,398,430.95) and his interest in LS & RK #1, LLC at over $4,000,000 (as opposed to $5,189.49). Indeed, he had submitted personal financial statements to federally insured financial institutions listing these assets as having values orders of magnitude greater than those attributed to them in connection with the repayment of the alleged "loans" reflected in the Backdated Promissory Notes.

71.     Interestingly, despite the fact that Defendant Roger Kahn purported to remain indebted to the RK Trust, he did not transfer other assets, such as his home and retirement accounts, into the RK Trust in satisfaction of his "debt."  He nevertheless contends that those assets are immune from *Plaintiffs'* collection efforts under applicable law.   Presumably, Defendant Roger Kahn only transferred assets he feared might be susceptible to execution by Plaintiffs into the RK Trust in repayment of his alleged "debt."

-THE POST-JUDGMENT TRANSFERS BEGIN-

72.     In late-August 2008, the jury in the Underlying Litigation adjudged Defendant Roger Kahn to be liable for fraud, and this Court entered the Judgment against him.  Confronted with that Judgment, Defendant Roger Kahn wasted little time in divesting himself of the few readily attachable assets that remained in his possession.  These transfers were made as part of a deliberate, morally bankrupt, and nefarious scheme to purposely hinder, delay, and defraud Defendant Roger Kahn's creditors, including Plaintiffs.

-THE ACCOUNT CLEARING AND REAL PROPERTY TRANSFERS-

73.     Defendant Roger Kahn exploited the automatic ten (10) day stay against execution of judgments afforded him by Federal Rule of Civil Procedure 62, and, then, the further forty-five (45) temporary stay against execution he requested, and obtained, from this Court, to empty virtually all of his bank accounts.

74.     Notably, Defendant Roger Kahn requested the forty-five (45) day stay against execution from this Court "because a number of [his] assets consist[ed] of real estate holdings which may require appraisal in order that he may establish collateral to post a bond[.]"  (*See* Sept. 15, 2008 Def.'s Mot. for Stay of Execution of J. and Related Relief p. 7, filed in Underlying Litigation, at Docket No. 498.)  Defendant Roger Kahn, however, never posted such a bond, but,

rather, abused this Court's allowance of an extended stay against execution to transfer his liquid assets and the majority of his real estate holdings beyond the reach of Plaintiffs' collection efforts.   After such transfers were effected, there was no need for Defendant Roger Kahn to post an appeal bond—there were virtually no assets left upon which Plaintiffs could execute.

75.    A non-exhaustive list of the transactions Defendant Roger Kahn engaged in between August 29, 2008 (when the Judgment was entered) and November 23, 2008 (when the stay against execution expired) to extract the final available funds from his bank accounts appears in the table below:

| DATE | ACCOUNT | METHOD OF TRANSFER | TRANSFEREE | AMOUNT |
|---|---|---|---|---|
| 09.02.2008 | Wachovia Sec. | Check | Roger Kahn | $5,000.00 |
| 09.03.2008 | Vanguard Group | Check | Roger Kahn | $6,034.16* |
| 09.03.2008 | Vanguard Group | Check | Roger Kahn | $4,392.59* |
| 09.03.2008 | Wachovia Sec. | Check | Elyn Kahn | $5,000.00 |
| 09.08.2008 | Charles Schwab | Check | Roger Kahn | $63,244.35* |
| 09.08.2008 | T. Rowe Price | Check | Roger Kahn | $5,962.48* |
| 09.08.2008 | First American | Check | Roger Kahn | $1,831.55* |
| 09.08.2008 | Wachovia Sec. | Check | Troutman Sanders | $121,730.36 |
| 09.12.2008 | E-Trade | Wire | Roger Kahn | $11,006.59* |
| 09.12.2008 | Wachovia Sec. | Check | Troutman Sanders | $200,000.00 |
| 09.15.2008 | UBS Inv. | Wire | Roger Kahn | $222,825.38 |

| 09.15.2008 | UBS Inv. | Wire | Roger Kahn | $100,000.00 |
|---|---|---|---|---|
| 09.15.2008 | Wachovia Sec. | Check | Laura Kahn Shir | $3,650.00 |
| 09.17.2008 | Wachovia Sec. | Check | The Kahn Cattle Co. | $1,148.25 |
| 09.23.2008 | Wachovia Sec. | Check | Britt & Associates | $9,835.58 |
| 09.26.2008 | Wachovia Sec. | Check | ASK Leasing, Inc. | $16,000.00 |
| 09.26.2008 | Wachovia Sec. | Check | The Kahn Cattle Co. | $20,000.00 |
| 09.30.2008 | Wachovia Sec. | Check | Roger Kahn | $5,000.00 |
| 10.01.2008 | Wachovia Sec. | Check | Tiffany's | $899.65 |
| 10.03.2008 | Wachovia Sec. | Check | Elyn Kahn | $5,000.00 |
| 10.10.2008 | Wachovia Sec. | Check | The Kahn Cattle Co. | $20,000.00 |
| 10.27.2008 | Wachovia Sec. | Check | The Kahn Cattle Co. | $8,080.04 |
| 11.07.2008 | Wachovia Sec. | Check | Elyn Kahn | $5,000.00 |
| | | | **Total** | **$841,640.98** |

\*   The transactions marked with an asterisk left the specified accounts empty.

76.   Shortly after entry of the Judgment, Defendant Roger Kahn also drained an account he had maintained for years with Wachovia Securities, in which he had routinely deposited and withdrawn approximately $250,000.00 per month, and in which he had routinely maintained balances in the hundreds of thousands of dollars.   Within a few weeks after the stay against execution expired, he all but emptied the account, leaving in it only slightly more than $4,000.   A non-exhaustive list of the transactions he made to drain that account

appears below:

| DATE | ACCOUNT | METHOD OF TRANSFER | TRANSFEREE | AMOUNT |
|------|---------|-----------|------------|--------|
| 12.03.2008 | Wachovia Sec. | Check | Elyn Kahn | $5,000.00 |
| 12.19.2008 | Wachovia Sec. | Check | ASK Leasing, Inc. | $18,000.00 |
| 12.22.2008 | Wachovia Sec. | Check | Roger Kahn | $5,000.00 |
| 12.23.2008 | Wachovia Sec. | Check | Roger Kahn | $5,000.00 |
| 12.23.2008 | Wachovia Sec. | Check | Roger Kahn | $5,000.00 |
| | | | **Total** | $38,000.00 |

77.    The transfers enumerated in the preceding two paragraphs are referred to herein, collectively, as the "Account Clearing Transfers."

78.    Upon information and belief, the Account Clearing Transfers, to the extent made to Defendant Roger Kahn, were then further transferred by Defendant Roger Kahn to third-parties.

79.    Also during the extended stay against execution afforded him by this Court, Defendant Roger Kahn transferred real property located at 612 Hillside Drive, Linville, North Carolina (the "Linville Property") and 2003 North Ocean Boulevard, Unit 1805, Boca Raton, Florida (the "Boca Raton Property," and, collectively, the "Real Property Transfers"), which had previously been titled in his name alone, to the RK Trust in ostensible satisfaction of the alleged debt reflected by the Backdated Promissory Notes.

80.    The deed transferring the Linville Property from Defendant Roger

Kahn to the RK Trust was recorded on or about October 17, 2008, and a deed transferring the Boca Raton Property from Defendant Roger Kahn to the RK Trust was recorded on or about October 6, 2008.

81.     Notably, at approximately the same time Defendant Roger Kahn transferred the Boca Raton Property to the RK Trust for ten dollars ($10.00), he had, upon information and belief, already identified Thomas J. Bacas to purchase the Property from the RK Trust for $420,000. That sale was completed, again with suspicious expediency, on October 29, 2008, just weeks after Defendant Roger Kahn's initial transfer of the Boca Raton Property to the RK Trust.

82.     At the time of the Entity and Notes Receivable Transfers and the Real Property Transfers, Defendants James Union and William Gwaltney were the Co-Trustees and/or Interim Co-Trustees of the RK Trust, and knowingly acquiesced to and accepted the transfers of the Entity and Notes Receivable Transfers and the Real Property Transfers by Defendant Roger Kahn, despite their actual knowledge of the suit brought by Plaintiffs and, upon information and belief, of the Judgment entered against Defendant Roger Kahn in the Underlying Litigation.

83.     The assets embodied in the Entity and Notes Receivable Transfers, the Account Clearing Transfers, and the Real Property Transfers were all

previously owned by Defendant Roger Kahn, individually, and but for his transfer of those assets, they could have been applied to the payment of the debt he owed to Plaintiffs.

-THE RK TRUST TRANSFERS-

84. Since making the Entity and Notes Receivable Transfers, moreover, Defendant Roger Kahn, with the consent, authorization, and acquiescence of Defendants James Union and William Gwaltney, began treating the RK Trust like his personal piggy bank. Indeed, since April 4, 2007, Defendant Roger Kahn has taken over $4,300,000 from the RK Trust for his own personal use and benefit, and, upon information and belief, has transferred such sums to third-parties. A list of three-hundred eighty-eight (388) transfers from the RK Trust to or on behalf of Defendant Roger Kahn, referred to, collectively, as the "RK Trust Transfers," comprise the following:

| DATE | TRANSFER AMOUNT | DATE | TRANSFER AMOUNT | DATE | TRANSFER AMOUNT |
|---|---|---|---|---|---|
| 4.13.2007 | $150,000.00 | 3.3.2009 | $5,000.00 | 7.27.2009 | $62.82 |
| 6.5.2007 | $30,000.00 | 3.3.2009 | $5,000.00 | 8.1.2009 | $5,000.00 |
| 6.12.2007 | $22,000.00 | 3.3.2009 | $650.00 | 8.1.2009 | $650.00 |
| 6.13.2007 | $4,000.00 | 3.3.2009 | $419.00 | 8.1.2009 | $5,000.00 |
| 6.19.2007 | $150,000.00 | 3.3.2009 | $15,400.00 | 8.3.2009 | $518.69 |
| 6.22.2007 | $2,000.00 | 3.9.2009 | $42,330.10 | 8.3.2009 | $564.27 |
| 6.25.2007 | $40,000.00 | 3.14.2009 | $165.33 | 8.3.2009 | $43.84 |
| 7.10.2007 | $90,000.00 | 3.14.2009 | $361.00 | 8.3.2009 | $8,000.00 |
| 7.18.2007 | $100,000.00 | 3.14.2009 | $137.21 | 8.3.2009 | $59.92 |

| | | | | | |
|---|---|---|---|---|---|
| 8.30.2007 | $220,000.00 | 3.14.2009 | $65.16 | 8.3.2009 | $399.98 |
| 10.24.2007 | $100,000.00 | 3.14.2009 | $224.64 | 8.3.2009 | $80.00 |
| 11.26.2007 | $100,000.00 | 3.14.2009 | $297.67 | 8.3.2009 | $45.00 |
| 11.27.2007 | $50,000.00 | 3.14.2009 | $60.00 | 8.3.2009 | $44.62 |
| 12.18.2007 | $140,000.00 | 3.14.2009 | $106.76 | 8.3.2009 | $84.00 |
| 1.8.2008 | $220,000.00 | 3.14.2009 | $125.00 | 8.3.2009 | $517.44 |
| 1.22.2008 | $20,000.00 | 3.14.2009 | $2,830.16 | 8.3.2009 | $5,000.00 |
| 1.29.2008 | $175,000.00 | 3.14.2009 | $1,117.39 | 8.3.2009 | $1,153.99 |
| 2.14.2008 | $199,343.71 | 3.14.2009 | $320.00 | 8.6.2009 | $10,000.00 |
| 2.26.2008 | $150,000.00 | 3.14.2009 | $22,612.00 | 8.10.2009 | $50.00 |
| 4.4.2008 | $200,000.00 | 3.14.2009 | $17,219.28 | 8.10.2009 | $479.08 |
| 4.8.2008 | $30,000.00 | 3.14.2009 | $8,913.00 | 8.10.2009 | $1,505.70 |
| 5.8.2008 | $210,000.00 | 3.14.2009 | $5,009.51 | 8.10.2009 | $285.00 |
| 5.27.2008 | $20,000.00 | 3.23.2009 | $16,000.00 | 8.10.2009 | $48.28 |
| 6.10.2008 | $12,000.00 | 3.23.2009 | $21.83 | 8.10.2009 | $236.68 |
| 6.16.2008 | $240,000.00 | 3.23.2009 | $242.82 | 8.10.2009 | $86.46 |
| 6.18.2008 | $6,500.00 | 3.23.2009 | $2,500.00 | 8.10.2009 | $79.95 |
| 6.26.2008 | $16,000.00 | 3.29.2009 | $333.13 | 8.10.2009 | $13,000.00 |
| 7.7.2008 | $150,000.00 | 3.29.2009 | $217.75 | 8.15.2009 | $4,729.00 |
| 8.6.2008 | $150,000.00 | 3.29.2009 | $215.74 | 8.18.2009 | $10,446.58 |
| 9.2.2008 | $32,500.00 | 3.29.2009 | $250.00 | 8.18.2009 | $749.00 |
| 11.2.2008 | $180,000.00 | 3.29.2009 | $44.57 | 8.18.2009 | $656.67 |
| 11.11.2008 | $50,000.00 | 3.29.2009 | $276.93 | 8.18.2009 | $89.00 |
| 12.16.2008 | $28,000.00 | 3.29.2009 | $462.07 | 8.18.2009 | $0.99 |
| 1.12.2009 | $1,800.00 | 3.29.2009 | $3,156.91 | 8.18.2009 | $17.82 |
| 1.12.2009 | $175.00 | 3.29.2009 | $7,960.75 | 8.18.2009 | $284.03 |
| 1.12.2009 | $220.32 | 3.29.2009 | $600.00 | 8.18.2009 | $43.90 |
| 1.12.2009 | $363.92 | 3.29.2009 | $2,300.00 | 8.18.2009 | $500.00 |
| 1.12.2009 | $29.04 | 4.1.2009 | $5,000.00 | 8.18.2009 | $199.75 |
| 1.12.2009 | $101.56 | 4.1.2009 | $5,000.00 | 8.18.2009 | $1,809.18 |
| 1.12.2009 | $52.82 | 4.1.2009 | $650.00 | 8.18.2009 | $479.08 |
| 1.12.2009 | $193.31 | 4.1.2009 | $1,075.00 | 8.18.2009 | $100.75 |
| 1.12.2009 | $206.63 | 4.8.2009 | $50.00 | 8.25.2009 | $111.54 |
| 1.12.2009 | $216.89 | 4.8.2009 | $15,299.90 | 8.25.2009 | $821.36 |
| 1.12.2009 | $364.39 | 4.8.2009 | $100.00 | 8.25.2009 | $3,409.60 |
| 1.12.2009 | $169.78 | 4.8.2009 | $30.00 | 8.25.2009 | $424.23 |

| 1.12.2009 | $100.00 | 4.8.2009 | $204.64 | 8.25.2009 | $4,450.00 |
| 1.12.2009 | $189.07 | 4.8.2009 | $65.16 | 9.1.2009 | $5,000.00 |
| 1.12.2009 | $50.00 | 4.8.2009 | $212.91 | 9.1.2009 | $650.00 |
| 1.12.2009 | $1,100.00 | 4.16.2009 | $25,000.00 | 9.1.2009 | $5,000.00 |
| 1.12.2009 | $140.00 | 4.16.2009 | $5,600.00 | 9.1.2009 | $1,157.00 |
| 1.12.2009 | $604.18 | 4.16.2009 | $4,387.84 | 9.1.2009 | $650.00 |
| 1.12.2009 | $161.13 | 4.16.2009 | $949.60 | 9.1.2009 | $80.00 |
| 1.12.2009 | $3,450.00 | 4.16.2009 | $95.00 | 9.1.2009 | $325.00 |
| 1.12.2009 | $232.72 | 4.18.2009 | $5,404.31 | 9.1.2009 | $532.99 |
| 1.12.2009 | $2,271.72 | 4.18.2009 | $15,000.00 | 9.1.2009 | $221.99 |
| 1.12.2009 | $40,000.00 | 4.20.2009 | $10,000.00 | 9.5.2009 | $13,000.00 |
| 1.12.2009 | $565.00 | 4.21.2009 | $8,059.52 | 9.9.2009 | $1,608.16 |
| 1.13.2009 | $15,000.00 | 4.21.2009 | $7,219.72 | 9.9.2009 | $8,118.63 |
| 1.13.2009 | $756.36 | 4.22.2009 | $45.05 | 9.9.2009 | $36.84 |
| 1.13.2009 | $149.00 | 4.22.2009 | $120.00 | 9.9.2009 | $1,200.00 |
| 1.13.2009 | $190.23 | 4.22.2009 | $179.88 | 9.9.2009 | $1,077.50 |
| 1.13.2009 | $2,885.66 | 4.22.2009 | $190.00 | 9.9.2009 | $44.40 |
| 1.13.2009 | $10,810.00 | 4.22.2009 | $552.38 | 9.9.2009 | $179.54 |
| 1.13.2009 | $95.00 | 4.22.2009 | $1,109.00 | 9.9.2009 | $160.08 |
| 1.20.2009 | $226.23 | 4.22.2009 | $621.28 | 9.9.2009 | $48.28 |
| 1.20.2009 | $2,410.60 | 4.22.2009 | $518.00 | 9.9.2009 | $495.00 |
| 1.20.2009 | $1,633.11 | 4.22.2009 | $1,850.00 | 9.9.2009 | $1,250.00 |
| 1.20.2009 | $443.54 | 4.22.2009 | $282.00 | 9.9.2009 | $17,000.00 |
| 1.20.2009 | $2,400.00 | 4.27.2009 | $25,000.00 | 9.9.2009 | $4,110.00 |
| 1.20.2009 | $430.92 | 5.1.2009 | $650.00 | 9.17.2009 | $600.00 |
| 1.20.2009 | $2,500.00 | 5.1.2009 | $5,000.00 | 9.17.2009 | $2,159.45 |
| 1.20.2009 | $20.00 | 5.1.2009 | $5,000.00 | 9.17.2009 | $61.92 |
| 1.20.2009 | $20.00 | 5.1.2009 | $216.27 | 9.17.2009 | $249.15 |
| 1.20.2009 | $20.00 | 5.1.2009 | $188.01 | 9.22.2009 | $8,500.00 |
| 1.20.2009 | $100.00 | 5.1.2009 | $44.58 | 9.25.2009 | $44.00 |
| 1.20.2009 | $6,000.00 | 5.11.2009 | $500.00 | 9.25.2009 | $583.00 |
| 1.24.2009 | $20.00 | 5.11.2009 | $500.00 | 9.25.2009 | $133.18 |
| 1.24.2009 | $6,112.39 | 5.11.2009 | $48.28 | 9.25.2009 | $349.94 |
| 1.24.2009 | $2,295.15 | 5.11.2009 | $50.00 | 9.25.2009 | $420.00 |
| 1.26.2009 | $205.74 | 5.11.2009 | $343.64 | 9.25.2009 | $51.45 |
| 1.26.2009 | $3,400.00 | 5.11.2009 | $65.36 | 9.25.2009 | $1,100.00 |

| | | | | | |
|---|---|---|---|---|---|
| 1.26.2009 | $24,023.30 | 5.11.2009 | $146.43 | 9.25.2009 | $594.80 |
| 2.1.2009 | $5,000.00 | 5.11.2009 | $882.11 | 9.25.2009 | $117.85 |
| 2.1.2009 | $650.00 | 5.11.2009 | $150.00 | 9.25.2009 | $170.00 |
| 2.1.2009 | $43,300.55 | 5.11.2009 | $1,741.26 | 9.25.2009 | $50.00 |
| 2.1.2009 | $44.07 | 5.11.2009 | $100.00 | 9.25.2009 | $52.50 |
| 2.1.2009 | $46.00 | 5.11.2009 | $111.20 | 9.25.2009 | $292.40 |
| 2.3.2009 | $1,096.41 | 5.11.2009 | $345.04 | 9.25.2009 | $13.71 |
| 2.3.2009 | $360.64 | 5.11.2009 | $207.19 | 9.25.2009 | $199.52 |
| 2.3.2009 | $52.00 | 5.11.2009 | $595.00 | 9.25.2009 | $22,922.16 |
| 2.3.2009 | $237.78 | 5.12.2009 | $717.93 | 9.30.2009 | $25,000.00 |
| 2.3.2009 | $270.00 | 5.12.2009 | $10,000.00 | 10.1.2009 | $5,000.00 |
| 2.3.2009 | $41.49 | 6.17.2009 | $8,988.75 | 10.1.2009 | $650.00 |
| 2.3.2009 | $16,000.00 | 6.17.2009 | $181.81 | 10.1.2009 | $5,000.00 |
| 2.3.2009 | $1,295.80 | 6.17.2009 | $1,100.00 | 10.6.2009 | $48.28 |
| 2.9.2009 | $46.75 | 6.22.2009 | $13,000.00 | 10.6.2009 | $45.00 |
| 2.9.2009 | $106.56 | 6.27.2009 | $285.41 | 10.12.2009 | $44.47 |
| 2.9.2009 | $191.65 | 6.27.2009 | $43.45 | 10.12.2009 | $143.39 |
| 2.9.2009 | $203.46 | 6.27.2009 | $259.64 | 10.12.2009 | $200.93 |
| 2.9.2009 | $65.16 | 6.28.2009 | $10,000.00 | 10.12.2009 | $82.86 |
| 2.9.2009 | $119.77 | 6.30.2009 | $5,000.00 | 10.12.2009 | $16.10 |
| 2.9.2009 | $82.59 | 7.1.2009 | $650.00 | 10.12.2009 | $377.21 |
| 2.9.2009 | $50.00 | 7.1.2009 | $25,000.00 | 10.12.2009 | $20.00 |
| 2.9.2009 | $1,100.00 | 7.1.2009 | $5,000.00 | 10.12.2009 | $17,559.97 |
| 2.10.2009 | $70.00 | 7.6.2009 | $288.27 | 10.12.2009 | $493.38 |
| 2.10.2009 | $7,627.22 | 7.6.2009 | $53.28 | 10.20.2009 | $38.73 |
| 2.10.2009 | $112.00 | 7.6.2009 | $209.00 | 10.20.2009 | $80.00 |
| 2.10.2009 | $175.98 | 7.6.2009 | $415.00 | 10.20.2009 | $18,000.00 |
| 2.17.2009 | $8,575.00 | 7.6.2009 | $6,669.33 | 10.20.2009 | $472.00 |
| 2.17.2009 | $12,603.50 | 7.6.2009 | $2,282.79 | 10.20.2009 | $1,796.95 |
| 2.17.2009 | $5,000.00 | 7.6.2009 | $25.08 | 10.20.2009 | $197.85 |
| 2.22.2009 | $97.93 | 7.6.2009 | $495.15 | 10.20.2009 | $633.10 |
| 2.22.2009 | $208.50 | 7.6.2009 | $426.34 | 10.20.2009 | $2,931.52 |
| 2.22.2009 | $7,935.57 | 7.6.2009 | $41.13 | 10.20.2009 | $6,880.00 |
| 2.22.2009 | $234.60 | 7.6.2009 | $296.98 | 10.20.2009 | $1,550.00 |
| 2.22.2009 | $64.20 | 7.6.2009 | $47.13 | 10.20.2009 | $3,193.94 |
| 2.22.2009 | $407.00 | 7.6.2009 | $12,000.00 | 10.20.2009 | $1,077.50 |

| 2.22.2009 | $109.29 | 7.10.2009 | $379.88 | 10.20.2009 | $313.13 |
|---|---|---|---|---|---|
| 3.1.2009 | $5,000.00 | 7.10.2009 | $95.00 | 10.20.2009 | $144.46 |
| 3.1.2009 | $650.00 | 7.10.2009 | $188.61 | 10.20.2009 | $503.00 |
| 3.1.2009 | $222.40 | 7.10.2009 | $211.40 | 10.20.2009 | $1,189.80 |
| 3.1.2009 | $384.64 | 7.10.2009 | $135.44 | 10.20.2009 | $41.42 |
| 3.3.2009 | $656.10 | 7.10.2009 | $44.54 | 10.23.2009 | $6,500.00 |
| 3.3.2009 | $44.39 | 7.10.2009 | $1,043.00 | 10.23.2009 | $500.00 |
| 3.3.2009 | $283.11 | 7.10.2009 | $140.00 | 10.26.2009 | $720.00 |
| 3.3.2009 | $262.33 | 7.10.2009 | $208.03 | 11.1.2009 | $5,000.00 |
| 3.3.2009 | $614.32 | 7.26.2009 | $2,635.00 | 11.1.2009 | $650.00 |
| 3.3.2009 | $5,838.42 | 7.27.2009 | $16,265.91 | 11.1.2009 | $5,000.00 |
| 3.3.2009 | $9,846.90 | 7.27.2009 | $578.48 | | |
| 3.3.2009 | $348.00 | 7.27.2009 | $6,408.99 | | |
| | | | | **Total** | **$4,306.516.15** |

85.     At the time of the RK Trust Transfers, Defendants James Union and William Gwaltney were the Co-Trustees and/or Interim Co-Trustees of the RK Trust, and knowingly acquiesced in, authorized, and consented to the RK Trust Transfers to Defendant Roger Kahn, despite their actual knowledge of the suit brought by Plaintiffs and, upon information and belief, of the Judgment entered against Defendant Roger Kahn in the Underlying Litigation.

-DEFENDANTS' READILY APPARENT FRAUD-

86.     If Defendants intended for the foregoing transfers to be anything other than an embarrassingly obvious attempt to defraud Defendant Roger Kahn's creditors, they failed at their task.  The transactions in question reek of fraud.

87.     Defendant Roger Kahn is the lifetime beneficiary and Co-Trustee of the RK Trust; a member, officer, or person in control of Defendants The Kahn Cattle Co., LLC, LS & RK #1, LLC, LS & RK #2, LLC, and ASK Leasing, Inc.; the husband of Elyn Kahn; and the father of Laura Kahn Shir.  Thus, the RK Trust, Elyn Kahn, Laura Kahn Shir, and Defendants The Kahn Cattle Co., LLC, LS & RK #1, LLC, LS & RK #2, LLC, and ASK Leasing, Inc. are all "insiders" within the meaning of O.C.G.A. § 18-2-71(7) and FLA. STAT. ANN. § 726.102(7).[3]

88.     Consequently, the Entity and Notes Receivable Transfers, the Real Property Transfers, and all Account Clearing Transfers to these parties were to "insiders."

89.     Furthermore, Defendant Roger Kahn has retained possession, dominion, and control over the assets transferred pursuant to the Entity and Notes Receivable Transfers and the Real Property Transfers, even after those assets were transferred to the RK Trust.

90.     Moreover, the obligations reflected in the Backdated Promissory Notes were, and details surrounding their making and execution remain, concealed from Plaintiffs.  Likewise, Defendants have steadfastly refused to

---

[3]     Both Georgia and Florida have adopted the Uniform Fraudulent Transfers Act (the "UFTA").  The Georgia UFTA governs the legitimacy *vel non* of all the transfers described herein, with the possible exception of the Real Property Transfers, which may instead be governed by the Florida UFTA.

provide Plaintiffs with information regarding transactions between the RK Trust and Defendant The Kahn Cattle Co., LLC, despite multiple attempts by Plaintiffs to obtain such information in post-judgment discovery related to the Underlying Litigation.

91.    In addition, at the time the Backdated Promissory Notes, the Entity and Notes Receivable Transfers, the Real Property Transfers, the Account Clearing Transfers, and the RK Trust Transfers (collectively, the "Fraudulent Transfers") were made by Defendant Roger Kahn, he had been sued (or, at a minimum, had been threatened with suit) by Plaintiffs.

92.    Further, the Entity and Notes Receivable Transfers, the Real Property Transfers, and the Account Clearing Transfers were, collectively, of substantially all Defendant Roger Kahn's assets.

93.    Moreover, Defendant Roger Kahn received no legitimate consideration from the RK Trust for the Backdated Promissory Notes, the Entity and Notes Receivable Transfers, or the Real Property Transfers, making them not for reasonably equivalent value.

94.    In addition, according to the personal financial statements that Defendant Roger Kahn  has provided to Plaintiffs, at the time Defendant Roger Kahn engaged in the Fraudulent Transfers, he was, or, shortly thereafter, became

insolvent, in that his purported debts were greater than all of his assets at a fair valuation.[4]

95.   What is more, the Real Property Transfers, the Account Clearing Transfers, and the majority of the RK Trust Transfers occurred shortly after Defendant Roger Kahn had incurred a substantial debt to Plaintiffs in the form of a $3,527,605 Judgment in the Underlying Litigation, and thus, were made shortly after a substantial debt was incurred.

## COUNT ONE

### FRAUDULENT TRANSFERS
### IN VIOLATION OF O.C.G.A. § 18-2-75 AND FLA. STAT. ANN. § 726.106(2)

(Against Defendant Roger Kahn and Defendants James Union and William Gwaltney, as Co-Trustees and/or Interim Co-Trustees of the RK Trust)

96.   Plaintiffs incorporate and reassert, as if fully set forth herein, all the preceding paragraphs of their Complaint.

97.   Plaintiffs, since at least 1996, have enjoyed a right to payment from, and thus, have been "creditors" of, Defendant Roger Kahn within the meaning of O.C.G.A. § 18-2-71(3) & (4) and FLA. STAT. ANN. § 726.102(3) & (4).

98.   Defendant Roger Kahn is, and at all times relevant to this action, has

---

[4]   This allegation should not be read to imply that the assets of Defendant Roger Kahn that will ultimately prove to be reachable by creditors were greater than his total, *legitimately* incurred liabilities.   Indeed, nothing herein should be construed as a suggestion that the Backdated Promissory Notes were in any way legitimate.

been liable to, and thus, a "debtor" of, Plaintiffs within the meaning of O.C.G.A. § 18-2-71(6) and FLA. STAT. ANN. § 726.102(6).

99.   The Entity and Notes Receivable Transfers and the Real Property Transfers made by Defendant Roger Kahn to the RK Trust were for an "antecedent debt" — namely, in partial satisfaction of the Backdated Promissory Notes.

100.   As previously pled, the RK Trust was, *vis-à-vis* Defendant Roger Kahn, an "insider" within the meaning of O.C.G.A. § 18-2-71(7) and FLA. STAT. ANN. § 726.102(7).

101.   Also as previously pled, at the time Defendant Roger Kahn made the Entity and Notes Receivable Transfers and the Real Property Transfers, he was insolvent, as his ostensible "debts" were greater than all of his assets at a fair valuation.

102.   What is more, the RK Trust, through its Co-Trustees, knew or had reasonable cause to believe that Defendant Roger Kahn was insolvent. Indeed, on March 6, 2007 and April 4, 2007, Defendants James Union and William Gwaltney, as Co-Trustees and/or Interim Co-Trustees for the RK Trust, had written Defendant Roger Kahn and had specifically asserted that his ostensible "debts" to the RK Trust (based, presumably, on the Backdated Promissory Notes)

exceeded the value of all of his assets.

103.   Thus, the Entity and Notes Receivable Transfers and the Real Property Transfers by Defendant Roger Kahn to the RK Trust, which were accepted and ratified by Defendants James Union and William Gwaltney, constitute *per se* fraudulent transfers within the meaning of O.C.G.A. § 18-2-75(b) and FLA. STAT. ANN. § 726.106(2).   That is, they were transfers made by Defendant Roger Kahn, a debtor, to the RK Trust, an insider, for a purportedly antecedent debt, at a time when Defendant Roger Kahn was ostensibly insolvent, and while the Co-Trustees and/or Interim Co-Trustees of the RK Trust had reasonable cause to believe that Defendant Roger Kahn was insolvent, to the detriment of Plaintiffs, his creditors, whose claim arose before the transfers were made.

104.   As a direct and proximate result of the foregoing fraudulent transfers, Plaintiffs have been damaged in an amount to be proven at trial.

105.   Unless otherwise restrained by this Court, moreover, Defendants will continue their fraudulent transfers to the irreparable injury of Plaintiffs, for which there will be no complete and adequate remedy at law.

## COUNT TWO

### FRAUDULENT TRANSFERS
### IN VIOLATION OF O.C.G.A. § 18-2-74(A)(1) AND
### FLA. STAT. ANN. § 726.105(1)(A)

(Against Defendants Roger Kahn, The Kahn Cattle Co., LLC, and ASK Leasing, Inc., and Defendants James Union and William Gwaltney, as Co-Trustees and/or Interim Co-Trustees of the RK Trust)

106.    Plaintiffs incorporate and reassert, as if fully set forth herein, all the preceding paragraphs of their Complaint.

107.    The Backdated Promissory Notes; the Entity and Notes Receivable Transfers; the Real Property Transfers; the RK Trust Transfers; and the Account Clearing Transfers, to the extent made to Elyn Kahn, Laura Kahn Shir, The Kahn Cattle Co., LLC, and/or ASK Leasing, Inc., all made by Defendant Roger Kahn and/or Defendants James Union and William Gwaltney, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, were also fraudulent transfers within the meaning of O.C.G.A. § 18-2-74(a)(1) and FLA. STAT. ANN. § 726.105(1)(a), in that each were made with the actual intent to hinder, delay, and/or defraud Plaintiffs as Defendant Roger Kahn's creditors.

108.    Such actual intent is evidenced by, *inter alia*, the fact:

    a. that the transfers were made to "insiders" within the meaning of O.C.G.A. §§ 18-2-71(7) & 18-2-74(b)(1) and FLA. STAT. ANN. §§

726.102(7) & 726.105(2)(a);

b. that Defendant Roger Kahn has retained possession, dominion, and control over the assets transferred pursuant to the Entity and Notes Receivable Transfers and the Real Property Transfers, even after those assets were transferred to the RK Trust, within the meaning of O.C.G.A. § 18-2-74(b)(2) and FLA. STAT. ANN. § 726.105(2)(b);

c. that the obligations reflected in the Backdated Promissory Notes were, and details surrounding their making and execution remain, concealed from Plaintiffs within the meaning of O.C.G.A. § 18-2-74(b)(3), as do all details surrounding transactions between the RK Trust and Defendant The Kahn Cattle Co., LLC;

d. that, at the time the Backdated Promissory Notes, the Entity and Notes Receivable Transfers, the Real Property Transfers, the Account Clearing Transfers, and the RK Trust Transfers were made by Defendant Roger Kahn, he had been sued (or, at a minimum, had been threatened with suit) by Plaintiffs within the meaning of O.C.G.A. § 18-2-74(b)(4) and FLA. STAT. ANN. § 726.105(2)(d);

e. that the Entity and Notes Receivable Transfers, the Real Property Transfers, and the Account Clearing Transfers were, collectively, of

substantially all Defendant Roger Kahn's assets within the meaning of O.C.G.A. § 18-2-74(b)(5) and FLA. STAT. ANN. § 726.105(2)(e);

f.  that Defendant Roger Kahn received no legitimate consideration from the RK Trust for the Backdated Promissory Notes, the Entity and Notes Receivable Transfers, or the Real Property Transfers, making them not for reasonably equivalent value within the meaning of O.C.G.A. § 18-2-74(b)(8) and FLA. STAT. ANN. § 726.105(2)(h);

g.  that, according to the personal financial statements that Defendant Roger Kahn  has provided to Plaintiffs, at the time Defendant Roger Kahn engaged in the Fraudulent Transfers, he was, or, shortly thereafter, became insolvent within the meaning of O.C.G.A. § 18-2-74(b)(9) and FLA. STAT. ANN. § 726.105(2)(i), in that his purported debts were greater than all of his assets at a fair valuation;

h.  that the Real Property Transfers, the Account Clearing Transfers, and the majority of the RK Trust Transfers occurred shortly after Defendant Roger Kahn had incurred a substantial debt to Plaintiffs in the form of a $3,527,605 Judgment in the Underlying Litigation, and thus, was made shortly after a substantial debt was incurred

within the meaning of O.C.G.A. § 18-2-74(b)(10) and FLA. STAT. ANN. § 726.105(2)(j); and

    i.  that the totality of the circumstances surrounding the transfers exclude any plausible explanation other than that Defendants were actively attempting to defraud, hinder, and delay Plaintiffs in their collection of the Judgment.

109.  As a direct and proximate result of the foregoing fraudulent transfers, Plaintiffs have been damaged in an amount to be proven at trial.

110.  Unless otherwise restrained by this Court, moreover, Defendants will continue their fraudulent transfers to the irreparable injury of Plaintiffs, for which there will be no complete and adequate remedy at law.

## COUNT THREE

## CONSPIRACY TO ENGAGE IN FRAUDULENT TRANSFERS

### (Against All Defendants)

111.  Plaintiffs incorporate and reassert, as if fully set forth herein, all the preceding paragraphs of their Complaint.

112.  Defendants agreed, cooperated, and conspired with one another to commit the fraudulent transfers specified in the preceding Counts.

113.  As part of this conspiracy, moreover, Defendants engaged in one or

more overt acts in furtherance thereof, including, but not limited to:

    a. Defendant Roger Kahn's execution of the Backdated Promissory Notes in favor of the RK Trust;

    b. Defendants James Union and William Gwaltney's sending multiple letters to Defendant Roger Kahn, calling the Backdated Promissory Notes due, explicitly referencing the Underlying Litigation as the motivation underlying their actions;

    c. Defendants James Union and William Gwaltney's acquiescence to and acceptance and/or authorization of the Backdated Promissory Notes, the Entity and Notes Receivable Transfers, the Real Property Transfers, and the RK Trust Transfers;

    d. Defendants Roger Kahn making, and Defendants The Kahn Cattle Co., LLC and ASK Leasing, Inc.'s acceptance of, the Account Clearing Transfers;

    e. the ratification of the transfers of Defendant Roger Kahn's interest in Defendants The Kahn Cattle Co., LLC, LS & RK #1, LLC, LS & RK #2, LLC, and ASK Leasing, Inc. by the member(s), officer(s), and director(s) of Defendants The Kahn Cattle Co., LLC, LS & RK #1, LLC, LS & RK #2, LLC, and ASK Leasing, Inc.; and

f.  Defendant Roger Kahn and Defendants James Union and William Gwaltney's collective recordation of the deed(s) embodying the Real Property Transfers.

114.   As a direct and proximate result of the foregoing conspiracy and fraudulent transfers, Plaintiffs have been injured in an amount to be proven at trial, but, in any event, to a degree different and greater than that which could have been inflicted upon then by any Defendant acting in isolation.

## COUNT FOUR

## DECLARATORY RELIEF RESPECTING FRAUDULENT TRANSFERS

### (Against All Defendants)

115.   Plaintiffs incorporate and reassert, as if fully set forth herein, all the preceding paragraphs of their Complaint.

116.   Despite the foregoing evidence amply demonstrating that the Backdated Promissory Notes, the Entity and Notes Receivable Transfers, the Account Clearing Transfers, the Real Property Transfers, and the RK Trust Transfers were fraudulent, Defendants, upon information and belief, maintain the position that the transfers and/or obligations made were legitimate maneuvers preventing Plaintiffs from executing on Defendant Roger Kahn's assets in satisfaction of their Judgment.

117.    There is accordingly an actual controversy between Plaintiffs and Defendants regarding the parties' rights and obligations *vis-à-vis* the transfers made and obligations incurred within the meaning of 28 U.S.C. § 2201.

118.    Plaintiffs are entitled to a declaration by this Court that the transfers made and obligations incurred were unlawful and fraudulent transfers with the meaning of the Georgia Uniform Fraudulent Transfer Act, O.C.G.A. § 18-2-70 *et seq.*, and the Florida Uniform Fraudulent Transfer Act, FLA. ST. ANN. § 726.101 *et seq.*

## COUNT FIVE

## CONSTRUCTIVE TRUST

(Against Defendants Roger Kahn, The Kahn Cattle Co., LLC, and ASK Leasing, Inc., and Defendants James Union and William Gwaltney, as Co-Trustees and/or Interim Co-Trustees of the RK Trust)

119.    Plaintiffs incorporate and reassert, as if fully set forth herein, all the preceding paragraphs of their Complaint.

120.    The RK Trust, through Defendants James Union and William Gwaltney, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, and Defendants The Kahn Cattle Co., LLC and ASK Leasing, Inc. received, accepted, and retained benefits to which they were not entitled by virtue of Defendant Roger Kahn's fraudulent transfers, described in Counts One and Two, *supra*.

121.    In view of the circumstances alleged herein, the RK Trust, through Defendants James Union and William Gwaltney, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, and Defendants The Kahn Cattle Co., LLC and ASK Leasing, Inc.'s retention of those benefits would be unjust and inequitable, and would result in the unjust enrichment of the RK Trust and Defendants The Kahn Cattle Co., LLC and ASK Leasing, Inc. at the expense of Plaintiffs, for which Plaintiffs lack an adequate remedy at law.

122.    Plaintiffs are accordingly entitled to the imposition of a constructive trust over the assets so transferred and/or all proceeds, consideration, and benefits derived by Defendants from their sale.

### COUNT SIX

## VIOLATION OF 18 U.S.C. § 1962(b) OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

(Against All Defendants)

123.    Plaintiffs incorporate and reassert, as if fully set forth herein, all the preceding paragraphs of their Complaint.

124.    Defendant Roger Kahn is a "person" within the meaning of 18 U.S.C. § 1961(3).

125.    The RK Trust is an "enterprise," with a clearly ascertainable structure and continuity of personnel (including its Co-Trustees), engaged in, and whose

activities affect, interstate commerce within the meaning of 18 U.S.C. § 1961(4) (the "RK Trust Enterprise").

126.    As described herein, Defendant Roger Kahn purposefully, knowingly, and intentionally acquired and maintained an interest in and control over the RK Trust Enterprise through a pattern of racketeering activity.

127.    <u>Multiple Acts of Mail and Wire Fraud.</u>    Defendant Roger Kahn intentionally and willingly devised and participated in a scheme to defraud his creditors, to fraudulently transfer his personal assets to the RK Trust, and to obstruct his creditors' efforts to collect lawful debts, in order to obtain an interest in and control over the RK Trust Enterprise, and knowingly and intentionally used the interstate mails, in violation of 18 U.S.C. § 1341, and interstate wires, in violation of 18 U.S.C. § 1343, as integral and essential devices to advance, further, and facilitate that scheme.

128.    For example, and without limitation, in furtherance of that scheme:

   a. At times between late-2005 and 2007, Defendant Roger Kahn, upon information and belief, caused the United States mails and wires to be used to receive, send, execute, and/or transfer the Backdated Promissory Notes;

   b. At times in 2005, Defendant Roger Kahn, upon information and

belief, caused the United States mails and wires to be used to receive, send, and/or transmit personal financial statements to institutions concealing the "indebtedness" reflected by, *inter alia*, the Backdated Promissory Notes, on his schedule of assets and liabilities;

c. On March 6, 2007 and again on April 4, 2007, Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, caused to be mailed to Defendant Roger Kahn, through the United States mails and/or wires, two letters, purportedly on behalf of Defendants James Union and William Gwaltney, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, calling the Backdated Promissory Notes "due";

d. On April 4, 2007, Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, upon information and belief, caused the United States mails and wires to be used to effect the Entity and Notes Payable Transfers described, *supra*, including, but not limited to, by communicating the ostensible transfer of the assets embodied

in the Entity and Notes Payable Transfers to the RK Trust to officers, members, and directors of Defendants The Kahn Cattle Co., LLC, LS & RK #1, LLC, LS & RK #2, LLC, and Fairpoint, LLC, and to counsel and advisors involved in the transfers;

e. At times between September 2, 2008 and December 23, 2008, Defendant Roger Kahn, upon information and belief, caused the United States mails and wires to be used to effect the Account Clearing Transfers described, *supra*, including, but not limited to, by making and/or receiving certain payments included in the same, transmitting monies included in the same to third-parties, receiving statements and other communications regarding the transfer of the monies included in the Account Clearing Transfers to third-parties, and communicating the existence of those Account Clearing Transfers to his advisors, accountants, and attorneys, and to officers, members, and directors of Defendants The Kahn Cattle Co., LLC and ASK Leasing, Inc.;

f. On October 6, 2008 and October 17, 2008, Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, upon information and

belief, caused the United States mails and wires to be used to effect the Real Property Transfers described, *supra*, including, but not limited to, by receiving, sending, executing, and/or recording documents reflecting the Real Property Transfers, communicating the existence of the Real Property Transfers to Defendant Roger Kahn's advisors, accountants, and attorneys, and to those of the RK Trust, and to paying, or causing to be paid, property taxes and related fees associated with the properties that were the subject of the Real Property Transfers;

g. At times between April 4, 2007 and the present, Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, upon information and belief, caused the United States mails and wires to be used to effect the RK Trust Transfers described, *supra*, including, but not limited to, by making and/or receiving certain payments included in the same by use of United States wires and/or mails, transmitting monies included in the same, receiving statements and other communications regarding the transfer of the monies included in the RK Trust Transfers to third-parties, and communicating the

existence of those RK Trust Transfers to Defendant Roger Kahn's advisors, accountants, and attorneys, and to those of the RK Trust; and

h. At times relevant to this action, Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, have, upon information and belief, relied on the United States mails and wires to communicate with advisors, accountants, and attorneys regarding the fraudulent transfers described herein, and to pay the fees of such advisors, accountants, and attorneys for advice rendered regarding the same.

129. The foregoing acts of mail fraud and wire fraud constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

130. The foregoing acts of mail fraud and wire fraud are related, in that, among other things:

a. they had the similar purposes of defrauding Defendant Roger Kahn's creditors, fraudulently transferring Defendant Roger Kahn's assets to the RK Trust, and obstructing Defendant Roger Kahn's creditors' efforts to collect lawful debts;

b.  they had similar participants, *i.e.*, Defendants Roger Kahn, The Kahn Cattle Co., LLC, LS & RK #1, LLC, LS & RK #2, LLC, and ASK Leasing, Inc., and Defendants James Union and William Gwaltney, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, and similar victims, *i.e.*, Plaintiffs and other creditors of Defendant Roger Kahn; and

c.  they had similar methods of commission and results.

131.   The foregoing racketeering acts also illustrate continuity and the threat of continuity, moreover, in that they have come to reflect Defendant Roger Kahn's regular way of conducting his affairs and those of the RK Trust over the past four years, that such acts have enabled the RK Trust to maintain continued custodianship over Defendant Roger Kahn's assets, and that these racketeering acts, and others like them, are ongoing, and Defendant Roger Kahn will continue to use the mails and wires to perpetrate schemes to defraud, unless and until Defendants are enjoined from continuing to perpetrate their unlawful schemes.

132.   By direct and proximate reason of Defendant Roger Kahn's pattern of racketeering activity and the predicate acts it comprises, Plaintiffs have suffered an injury in an amount to be proven at trial.

133.   The injuries Plaintiffs have suffered as a result of Defendant Roger Kahn's violation of 18 U.S.C. § 1962(b) are separate and distinct from the injuries that Plaintiffs suffered as a consequence of Defendant Roger Kahn's individual predicate acts, in that they have accomplished the near total deprivation of Plaintiffs' ability to collect on a lawful judgment.

134.   Unless otherwise restrained by this Court, moreover, Defendants will continue their racketeering activities to the irreparable injury of Plaintiffs, for which there will be no complete and adequate remedy at law.

135.   Defendants The Kahn Cattle Co., LLC, LS & RK #1, LLC, LS & RK #2, LLC, and ASK Leasing, Inc., and William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, are liable for Defendant Roger Kahn's unlawful acts, because these Defendants have ratified such unlawful acts by accepting the fruits and proceeds of Defendant Roger Kahn's illegal activities after having notice and knowledge of the nature of the same, and have knowingly allowed for the acquisition of assets in their names, the transfer of interests in their organizations, and/or the transfer of their assets brought about as a consequence of these racketeering activities.

## COUNT SEVEN

## VIOLATION OF 18 U.S.C. § 1962(c) OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

(Against All Defendants)

136.    Plaintiffs incorporate and reassert, as if fully set forth herein, all the preceding paragraphs of their Complaint.

137.    Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, are each "persons" within the meaning of 18 U.S.C. § 1961(3).

138.    The RK Trust is an "enterprise," with a clearly ascertainable structure and continuity of personnel (including its Co-Trustees), engaged in, and whose activities affect, interstate commerce within the meaning of 18 U.S.C. § 1961(4) (the "RK Trust Enterprise").

139.    Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, are each associated with the RK Trust Enterprise.

140.    Furthermore, Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, each conduct or participate in the conduct of the RK Trust Enterprise's affairs, in that each actively participates in the management and operation of the

RK Trust Enterprise, and directs the affairs of the RK Trust Enterprise.

141.    For example, and by way of illustration only, Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, exercise discretionary control over the allocation, distribution, and placement of the RK Trust Enterprise's resources.

142.    Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, agreed to, and knowingly, intentionally, and willfully participated in the conduct of the RK Trust Enterprise's affairs through a pattern of racketeering activity, and for the unlawful purpose of defrauding Plaintiffs and others creditors of Defendant Roger Kahn.

143.    Multiple Acts of Mail and Wire Fraud.  Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, intentionally and willingly devised and participated in a scheme to defraud Defendant Roger Kahn's creditors, to fraudulently transfer Defendant Roger Kahn's assets to the RK Trust, and to obstruct his creditors' efforts to collect lawful debts, and knowingly and intentionally used the interstate mails, in violation of 18 U.S.C. § 1341, and

interstate wires, in violation of 18 U.S.C. § 1343, as integral and essential devices to advance, further, and facilitate that scheme.

144.   For example, and without limitation, in furtherance of that scheme:

a.   At times between late-2005 and 2007, Defendant Roger Kahn, upon information and belief, caused the United States mails and wires to be used to receive, send, execute, and/or transfer the Backdated Promissory Notes;

b.   At times in 2005, Defendant Roger Kahn, upon information and belief, caused the United States mails and wires to be used to receive, send, and/or transmit personal financial statements to institutions concealing the "indebtedness" reflected by, *inter alia*, the Backdated Promissory Notes, on his schedule of assets and liabilities;

c.   On March 6, 2007 and again on April 4, 2007, Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, caused to be mailed to Defendant Roger Kahn, through the United States mails and/or wires, two letters, purportedly on behalf of Defendants James Union and William Gwaltney, as Co-Trustees and/or Interim Co-

Trustees of the RK Trust, calling the Backdated Promissory Notes "due";

d. On April 4, 2007, Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, upon information and belief, caused the United States mails and wires to be used to effect the Entity and Notes Payable Transfers described, *supra*, including, but not limited to, by communicating the ostensible transfer of the assets embodied in the Entity and Notes Payable Transfers to the RK Trust to officers, members, and directors of Defendants The Kahn Cattle Co., LLC, LS & RK #1, LLC, LS & RK #2, LLC, and Fairpoint, LLC, and to counsel and advisors involved in the transfers;

e. At times between September 2, 2008 and December 23, 2008, Defendant Roger Kahn, upon information and belief, caused the United States mails and wires to be used to effect the Account Clearing Transfers described, *supra*, including, but not limited to, by making and/or receiving certain payments included in the same, transmitting monies included in the same to third-parties, receiving statements and other communications regarding the transfer of the

monies included in the Account Clearing Transfers to third-parties, and communicating the existence of those Account Clearing Transfers to his advisors, accountants, and attorneys, and to officers, members, and directors of Defendants The Kahn Cattle Co., LLC and ASK Leasing, Inc.;

f.  On October 6, 2008 and October 17, 2008, Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, upon information and belief, caused the United States mails and wires to be used to effect the Real Property Transfers described, *supra*, including, but not limited to, by receiving, sending, executing, and/or recording documents reflecting the Real Property Transfers, communicating the existence of the Real Property Transfers to Defendant Roger Kahn's advisors, accountants, and attorneys, and to those of the RK Trust, and to paying, or causing to be paid, property taxes and related fees associated with the properties that were the subject of the Real Property Transfers;

g.  At times between April 4, 2007 and the present, Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as

Co-Trustees and/or Interim Co-Trustees of the RK Trust, upon information and belief, caused the United States mails and wires to be used to effect the RK Trust Transfers described, *supra*, including, but not limited to, by making and/or receiving certain payments included in the same by use of United States wires and/or mails, transmitting monies included in the same, receiving statements and other communications regarding the transfer of the monies included in the RK Trust Transfers to third-parties, and communicating the existence of those RK Trust Transfers to Defendant Roger Kahn's advisors, accountants, and attorneys, and to those of the RK Trust; and

h. At times relevant to this action, Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, have, upon information and belief, relied on the United States mails and wires to communicate with advisors, accountants, and attorneys regarding the fraudulent transfers described herein, and to pay the fees of such advisors, accountants, and attorneys for advice rendered regarding the same.

145.   <u>Bank Fraud.</u>   Defendant Roger Kahn further engaged in the racketeering act of bank fraud, in violation of 18 U.S.C. § 1344, in connection with his participation in the conduct of the affairs of the RK Trust Enterprise.

146.   Among other acts, Defendant Roger Kahn, in or about March 2005, caused a personal financial statement to be submitted to RBC Centura, a federally insured financial institution, reflecting that Defendant Roger Kahn enjoyed a net worth of $27,877,573.85.

147.   Defendant Roger Kahn knowingly and intentionally attempted to execute a scheme to defraud RBC Centura, a federally insured financial institution, into believing that he enjoyed the net worth so stated, when, according to other instruments executed by Defendant Roger Kahn, he in fact purported to have a negative net worth.

148.   In addition, Defendant Roger Kahn knowingly executed, or attempted to execute, a scheme to obtain funds from RBC Centura, a federally insured financial institution, based on the fraudulent representations contained in that financial statement.

149.   In particular, Defendant Kahn submitted the net worth statement, to RBC Centura in or about 2005 to obtain a loan for his son-in-law, Gil Shir, to open a liquor store.

150.   The foregoing acts of mail fraud, wire fraud, and bank fraud constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

151.   The foregoing acts of mail fraud, wire fraud, and bank fraud are related, in that, among other things:

    a.   they had the similar purposes of defrauding Defendant Roger Kahn's creditors, fraudulently transferring Defendant Roger Kahn's assets to the RK Trust, and obstructing Defendant Roger Kahn's creditors' efforts to collect lawful debts;

    b.   they had similar participants, *i.e.*, Defendants Roger Kahn, The Kahn Cattle Co., LLC, LS & RK #1, LLC, LS & RK #2, LLC, and ASK Leasing, Inc., and Defendants James Union and William Gwaltney, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, and similar victims, *i.e.*, Plaintiffs and other creditors of Defendant Roger Kahn; and

    c.   they had similar methods of commission and results.

152.   The foregoing racketeering acts also illustrate continuity and the threat of continuity, moreover, in that they have come to reflect Defendant Roger Kahn's and Defendants William W. Gwaltney and James Union's regular way of

conducting Defendant Roger Kahn's affairs and those of the RK Trust over the past four years, that such acts have enabled the RK Trust to maintain continued custodianship over Defendant Roger Kahn's assets, and that these racketeering acts, and others like them, are ongoing, and Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, will continue to use the mails and wires to perpetrate schemes to defraud, unless and until Defendants are enjoined from continuing to perpetrate their unlawful schemes.

153.   By direct and proximate reason of Defendant Roger Kahn's and Defendants William W. Gwaltney and James Union's pattern of racketeering activity and the predicate acts it comprises, Plaintiffs have suffered an injury in an amount to be proven at trial.

154.   The injuries Plaintiffs have suffered as a result of Defendant Roger Kahn's and Defendants William W. Gwaltney and James Union's violation of 18 U.S.C. § 1962(c) are separate and distinct from the injuries that Plaintiffs suffered as a consequence of Defendants' individual predicate acts, in that they have accomplished the near total deprivation of Plaintiffs' ability to collect on a lawful judgment.

155.   Unless otherwise restrained by this Court, moreover, Defendants

will continue their racketeering activities to the irreparable injury of Plaintiffs, for which there will be no complete and adequate remedy at law.

156.    Defendants The Kahn Cattle Co., LLC, LS & RK #1, LLC, LS & RK #2, LLC, ASK Leasing, Inc. are liable for Defendant Roger Kahn's and Defendants William W. Gwaltney and James Union's unlawful acts, because these Defendants have ratified such unlawful acts by accepting the fruits and proceeds of Defendant Roger Kahn's illegal activities after having notice and knowledge of the nature of the same, and have knowingly allowed for the acquisition of assets in their names, the transfer of interests in their organizations, and/or the transfer of their assets brought about as a consequence of these racketeering activities.

### COUNT EIGHT

## VIOLATION OF 18 U.S.C. § 1962(c) OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

(Against All Defendants)

157.    Plaintiffs incorporate and reassert, as if fully set forth herein, all the preceding paragraphs of their Complaint.

158.    Defendants Roger Kahn, The Kahn Cattle Co., LLC, LS & RK #1, LLC, LS & RK #2, LLC, and ASK Leasing, Inc., and Defendants James Union and William Gwaltney, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, are each "persons" within the meaning of 18 U.S.C. § 1961(3).

159.   Defendants Roger Kahn, The Kahn Cattle Co., LLC, LS & RK #1, LLC, LS & RK #2, LLC, and ASK Leasing, Inc., and Defendants James Union and William Gwaltney, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, form an "association in fact" enterprise within the meaning of 18 U.S.C. § 1961(4), which is engaged in, and whose activities affect, interstate commerce (the "Roger Kahn Association Enterprise").

160.   The Roger Kahn Association Enterprise has, and those persons it comprises have, the common goal of shielding Defendant Roger Kahn's assets from collection by lawful creditors, including Plaintiffs.

161.   The Roger Kahn Association Enterprise enjoys a continuity in structure and personnel, and a cognizable structure distinct and apart from that inherent in the pattern of racketeering activity.

162.   Defendants Roger Kahn, The Kahn Cattle Co., LLC, LS & RK #1, LLC, LS & RK #2, LLC, and ASK Leasing, Inc., and Defendants James Union and William Gwaltney, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, are each associated with the Roger Kahn Association Enterprise.

163.   Furthermore, Defendants Roger Kahn, The Kahn Cattle Co., LLC, LS & RK #1, LLC, LS & RK #2, LLC, and ASK Leasing, Inc., and Defendants James Union and William Gwaltney, as Co-Trustees and/or Interim Co-Trustees of the

RK Trust, each conduct or participate in the conduct of the Roger Kahn Association Enterprise's affairs, in that each actively participates in the management and operation of the Roger Kahn Association Enterprise, holds assets of the Roger Kahn Association Enterprise, and directs the affairs of the Roger Kahn Association Enterprise.

164.   For example, and by way of illustration only, Defendants Roger Kahn, The Kahn Cattle Co., LLC, LS & RK #1, LLC, LS & RK #2, LLC, and ASK Leasing, Inc., and Defendants James Union and William Gwaltney, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, exercise discretionary control over the allocation, distribution, and placement of the Roger Kahn Association Enterprise's resources.

165.   Defendants Roger Kahn, The Kahn Cattle Co., LLC, LS & RK #1, LLC, LS & RK #2, LLC, and ASK Leasing, Inc., and Defendants James Union and William Gwaltney, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, agreed to, and knowingly, intentionally, and willfully participated in the conduct of the Roger Kahn Association Enterprise's affairs through a pattern of racketeering activity, and for the unlawful purpose of defrauding Plaintiffs and others creditors of Defendant Roger Kahn.

166.    Multiple Acts of Mail and Wire Fraud. Defendants Roger Kahn, The Kahn Cattle Co., LLC, LS & RK #1, LLC, LS & RK #2, LLC, and ASK Leasing, Inc., and Defendants James Union and William Gwaltney, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, intentionally and willingly devised and participated in a scheme to defraud Defendant Roger Kahn's creditors, to fraudulently transfer Defendant Roger Kahn's assets to the RK Trust and other persons comprising the Roger Kahn Association Enterprise, and to obstruct his creditors' efforts to collect lawful debts, and knowingly and intentionally used the interstate mails, in violation of 18 U.S.C. § 1341, and interstate wires, in violation of 18 U.S.C. § 1343, as integral and essential devices to advance, further, and facilitate that scheme.

167.    For example, and without limitation, in furtherance of that scheme:

a.  At times between late-2005 and 2007, Defendant Roger Kahn, upon information and belief, caused the United States mails and wires to be used to receive, send, execute, and/or transfer the Backdated Promissory Notes;

b.  At times in 2005, Defendant Roger Kahn, upon information and belief, caused the United States mails and wires to be used to receive, send, and/or transmit personal financial statements to

institutions concealing the "indebtedness" reflected by, *inter alia*, the Backdated Promissory Notes, on his schedule of assets and liabilities;

c.  On March 6, 2007 and again on April 4, 2007, Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, caused to be mailed to Defendant Roger Kahn, through the United States mails and/or wires, two letters, purportedly on behalf of Defendants James Union and William Gwaltney, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, calling the Backdated Promissory Notes "due";

d.  On April 4, 2007, Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, upon information and belief, caused the United States mails and wires to be used to effect the Entity and Notes Payable Transfers described, *supra*, including, but not limited to, by communicating the ostensible transfer of the assets embodied in the Entity and Notes Payable Transfers to the RK Trust to officers, members, and directors of Defendants The Kahn Cattle Co., LLC, LS

& RK #1, LLC, LS & RK #2, LLC, and Fairpoint, LLC, and to counsel and advisors involved in the transfers;

e. At times between September 2, 2008 and December 23, 2008, Defendant Roger Kahn, upon information and belief, caused the United States mails and wires to be used to effect the Account Clearing Transfers described, *supra,* including, but not limited to, by making and/or receiving certain payments included in the same, transmitting monies included in the same to third-parties, receiving statements and other communications regarding the transfer of the monies included in the Account Clearing Transfers to third-parties, and communicating the existence of those Account Clearing Transfers to his advisors, accountants, and attorneys, and to officers, members, and directors of Defendants The Kahn Cattle Co., LLC and ASK Leasing, Inc.;

f. On October 6, 2008 and October 17, 2008, Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, upon information and belief, caused the United States mails and wires to be used to effect the Real Property Transfers described, *supra*, including, but not

limited to, by receiving, sending, executing, and/or recording documents reflecting the Real Property Transfers, communicating the existence of the Real Property Transfers to Defendant Roger Kahn's advisors, accountants, and attorneys, and to those of the RK Trust, and to paying, or causing to be paid, property taxes and related fees associated with the properties that were the subject of the Real Property Transfers;

g.  At times between April 4, 2007 and the present, Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, upon information and belief, caused the United States mails and wires to be used to effect the RK Trust Transfers described, *supra*, including, but not limited to, by making and/or receiving certain payments included in the same by use of United States wires and/or mails, transmitting monies included in the same, receiving statements and other communications regarding the transfer of the monies included in the RK Trust Transfers to third-parties, and communicating the existence of those RK Trust Transfers to Defendant Roger Kahn's advisors, accountants, and attorneys, and to those of the RK Trust;

and

   h. At times relevant to this action, Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, have, upon information and belief, relied on the United States mails and wires to communicate with advisors, accountants, and attorneys regarding the fraudulent transfers described herein, and to pay the fees of such advisors, accountants, and attorneys for advice rendered regarding the same.

168.   <u>Bank Fraud.</u>   Defendant Roger Kahn further engaged in the racketeering act of bank fraud, in violation of 18 U.S.C. § 1344, in connection with his participation in the conduct of the affairs of the Roger Kahn Association Enterprise.

169.   Among other acts, Defendant Roger Kahn, in or about March 2005, caused a personal financial statement to be submitted to RBC Centura, a federally insured financial institution, reflecting that Defendant Roger Kahn enjoyed a net worth of $27,877,573.85.

170.   Defendant Roger Kahn knowingly and intentionally attempted to execute a scheme to defraud RBC Centura, a federally insured financial institution,

into believing that he enjoyed the net worth so stated, when, according to other instruments executed by Defendant Roger Kahn, he in fact purported to have a negative net worth.

171.   In addition, Defendant Roger Kahn knowingly executed, or attempted to execute, a scheme to obtain funds from RBC Centura, a federally insured financial institution, based on the fraudulent representations contained in that personal financial statement.

172.   In particular, Defendant Kahn submitted the net worth statement to RBC Centura in or about 2005 to obtain a loan for his son-in-law, Gil Shir, to open a liquor store.

173.   The foregoing acts of mail fraud, wire fraud, and bank fraud constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

174.   The foregoing acts of mail fraud, wire fraud, and bank fraud are related, in that, among other things:

> a. they had the similar purposes of defrauding Defendant Roger Kahn's creditors, fraudulently transferring Defendant Roger Kahn's assets to the RK Trust, and obstructing Defendant Roger Kahn's creditors' efforts to collect lawful debts;

b.  they had similar participants, *i.e.*, Defendants Roger Kahn, The Kahn Cattle Co., LLC, LS & RK #1, LLC, LS & RK #2, LLC, and ASK Leasing, Inc., and Defendants James Union and William Gwaltney, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, and similar victims, *i.e.*, Plaintiffs and other creditors of Defendant Roger Kahn; and

c.  they had similar methods of commission and results.

175.   The foregoing racketeering acts also illustrate continuity and the threat of continuity, moreover, in that they have come to reflect Defendants' regular way of conducting Defendant Roger Kahn's affairs and those of the Roger Kahn Association Enterprise over the past four years, that such acts have enabled the Roger Kahn Association Enterprise to maintain continued custodianship over Defendant Roger Kahn's assets, and that these racketeering acts, and others like them, are ongoing, and Defendants will continue to use the mails and wires to perpetrate schemes to defraud, unless and until Defendants are enjoined from continuing to perpetrate their unlawful schemes.

176.   By direct and proximate reason of Defendants' pattern of racketeering activity and the predicate acts it comprises, Plaintiffs have suffered an injury in an amount to be proven at trial.

177. The injuries Plaintiffs have suffered as a result of Defendants' violation of 18 U.S.C. § 1962(c) are separate and distinct from the injuries that Plaintiffs suffered as a consequence of Defendants' individual predicate acts, in that they have accomplished the near total deprivation of Plaintiffs' ability to collect on a lawful judgment.

178. Unless otherwise restrained by this Court, moreover, Defendants will continue their racketeering activities to the irreparable injury of Plaintiffs, for which there will be no complete and adequate remedy at law.

## COUNT NINE

## VIOLATION OF 18 U.S.C. § 1962(d) OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

### (Against All Defendants)

179. Plaintiffs incorporate and reassert, as if fully set forth herein, all the preceding paragraphs of their Complaint.

180. As set forth above, Defendants agreed and conspired to violate 18 U.S.C. § 1962(b) and 18 U.S.C. § 1962(c). Specifically, Defendants agreed and conspired (a) to permit Defendant Roger Kahn to acquire and maintain an interest in and control over the RK Trust Enterprise through a pattern of racketeering activity involving mail fraud, in violation of 18 U.S.C. § 1341, and wire fraud, in violation of 18 U.S.C. § 1343; and (b) to conduct and participate in the conduct of

the affairs of the RK Trust Enterprise and/or the Roger Kahn Association Enterprise through a pattern of racketeering activity involving mail fraud, in violation of 18 U.S.C. § 1341, wire fraud, in violation of 18 U.S.C. § 1343, and bank fraud, in violation of 18 U.S.C. § 1344.

181.   Defendants each knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes describe above.  That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(b) and 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

182.   As a direct and proximate result of Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs have suffered an injury in an amount to be proven at trial.

## COUNT TEN

### VIOLATION OF O.C.G.A § 16-14-4(a) OF THE GEORGIA RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

(Against All Defendants)

183.   Plaintiffs incorporate and reassert, as if fully set forth herein, all the preceding paragraphs of their Complaint.

184.   Defendant Roger Kahn is a "person" within the meaning of O.C.G.A. § 16-14-4.

185.   The RK Trust is an "enterprise," with a clearly ascertainable structure

and continuity of personnel (including its Co-Trustees), engaged in, and whose activities affect, the economy of this State and interstate commerce within the meaning of O.C.G.A. § 16-14-3(6) (the "RK Trust Enterprise").

186.   As described herein, Defendant Roger Kahn purposefully, knowingly, and intentionally acquired and maintained an interest in and control over the RK Trust Enterprise and its assets through a pattern of racketeering activity.

187.   <u>Multiple Acts of Mail and Wire Fraud.</u>   Defendant Roger Kahn intentionally and willingly devised and participated in a scheme to defraud his creditors, to fraudulently transfer his personal assets to the RK Trust, and to obstruct his creditors' efforts to collect lawful debts, in order to obtain an interest in and control over the RK Trust Enterprise, and knowingly and intentionally used the interstate mails, in violation of 18 U.S.C. § 1341, and interstate wires, in violation of 18 U.S.C. § 1343, as integral and essential devices to advance, further, and facilitate that scheme.

188.   For example, and without limitation, in furtherance of that scheme:

   a. At times between late-2005 and 2007, Defendant Roger Kahn, upon information and belief, caused the United States mails and wires to be used to receive, send, execute, and/or transfer the Backdated Promissory Notes;

b. At times in 2005, Defendant Roger Kahn, upon information and belief, caused the United States mails and wires to be used to receive, send, and/or transmit personal financial statements to institutions concealing the "indebtedness" reflected by, *inter alia*, the Backdated Promissory Notes, on his schedule of assets and liabilities;

c. On March 6, 2007 and again on April 4, 2007, Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, caused to be mailed to Defendant Roger Kahn, through the United States mails and/or wires, two letters, purportedly on behalf of Defendants James Union and William Gwaltney, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, calling the Backdated Promissory Notes "due";

d. On April 4, 2007, Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, upon information and belief, caused the United States mails and wires to be used to effect the Entity and Notes Payable Transfers described, *supra*, including, but not limited

to, by communicating the ostensible transfer of the assets embodied in the Entity and Notes Payable Transfers to the RK Trust to officers, members, and directors of Defendants The Kahn Cattle Co., LLC, LS & RK #1, LLC, LS & RK #2, LLC, and Fairpoint, LLC, and to counsel and advisors involved in the transfers;

e. At times between September 2, 2008 and December 23, 2008, Defendant Roger Kahn, upon information and belief, caused the United States mails and wires to be used to effect the Account Clearing Transfers described, *supra*, including, but not limited to, by making and/or receiving certain payments included in the same, transmitting monies included in the same to third-parties, receiving statements and other communications regarding the transfer of the monies included in the Account Clearing Transfers to third-parties, and communicating the existence of those Account Clearing Transfers to his advisors, accountants, and attorneys, and to officers, members, and directors of Defendants The Kahn Cattle Co., LLC and ASK Leasing, Inc.;

f. On October 6, 2008 and October 17, 2008, Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees

and/or Interim Co-Trustees of the RK Trust, upon information and belief, caused the United States mails and wires to be used to effect the Real Property Transfers described, *supra*, including, but not limited to, by receiving, sending, executing, and/or recording documents reflecting the Real Property Transfers, communicating the existence of the Real Property Transfers to Defendant Roger Kahn's advisors, accountants, and attorneys, and to those of the RK Trust, and to paying, or causing to be paid, property taxes and related fees associated with the properties that were the subject of the Real Property Transfers;

g. At times between April 4, 2007 and the present, Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, upon information and belief, caused the United States mails and wires to be used to effect the RK Trust Transfers described, *supra*, including, but not limited to, by making and/or receiving certain payments included in the same by use of United States wires and/or mails, transmitting monies included in the same, receiving statements and other communications regarding the transfer of the monies included

in the RK Trust Transfers to third-parties, and communicating the existence of those RK Trust Transfers to Defendant Roger Kahn's advisors, accountants, and attorneys, and to those of the RK Trust; and

h. At times relevant to this action, Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, have, upon information and belief, relied on the United States mails and wires to communicate with advisors, accountants, and attorneys regarding the fraudulent transfers described herein, and to pay the fees of such advisors, accountants, and attorneys for advice rendered regarding the same.

189. The foregoing acts of mail fraud and wire fraud constitute a pattern of racketeering activity within the meaning of O.C.G.A. § 16-14-3(8), are not isolated incidents, and were all undertaken in furtherance of schemes that are interrelated in that, *inter alia*:

a. they had the similar purposes of defrauding Defendant Roger Kahn's creditors, fraudulently transferring Defendant Roger Kahn's assets to

the RK Trust, and obstructing Defendant Roger Kahn's creditors' efforts to collect lawful debts;

b. they had similar participants, *i.e.*, Defendants Roger Kahn, The Kahn Cattle Co., LLC, LS & RK #1, LLC, LS & RK #2, LLC, and ASK Leasing, Inc., and Defendants James Union and William Gwaltney, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, and similar victims, *i.e.*, Plaintiffs and other creditors of Defendant Roger Kahn; and

c. they had similar methods of commission and results.

190.   The foregoing racketeering acts also illustrate continuity and the threat of continuity, moreover, in that they have come to reflect Defendant Roger Kahn's regular way of conducting his affairs and those of the RK Trust over the past four years, that such acts have enabled the RK Trust to maintain continued custodianship over Defendant Roger Kahn's assets, and that these racketeering acts, and others like them, are ongoing, and Defendant Roger Kahn will continue to use the mails and wires to perpetrate schemes to defraud, unless and until Defendants are enjoined from continuing to perpetrate their unlawful schemes.

191.   By direct and proximate reason of Defendant Roger Kahn's pattern of racketeering activity and the predicate acts it comprises, Plaintiffs have suffered an injury in an amount to be proven at trial.

192.   The injuries Plaintiffs have suffered as a result of Defendant Roger Kahn's violation of O.C.G.A. § 16-14-4(a) are separate and distinct from the injuries that Plaintiffs suffered as a consequence of Defendant Roger Kahn's individual predicate acts, in that they have accomplished the near total deprivation of Plaintiffs' ability to collect on a lawful judgment.

193.   Defendants The Kahn Cattle Co., LLC, LS & RK #1, LLC, LS & RK #2, LLC, and ASK Leasing, Inc., and William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, are liable for Defendant Roger Kahn's unlawful acts, because these Defendants have ratified such unlawful acts by accepting the fruits and proceeds of Defendant Roger Kahn's illegal activities after having notice and knowledge of the nature of the same, and have knowingly allowed for the acquisition of assets in their names, the transfer of interests in their organizations, and/or the transfer of their assets brought about as a consequence of these racketeering activities.

194.   Unless otherwise restrained by this Court, moreover, Defendants will continue their violations of the Georgia RICO Act, posing an immediate danger of

significant loss or damage to Plaintiffs, for which there will be no complete and adequate remedy at law.

## COUNT ELEVEN

### VIOLATION OF O.C.G.A § 16-14-4(b) OF THE GEORGIA RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

(Against All Defendants)

195.    Plaintiffs incorporate and reassert, as if fully set forth herein, all the preceding paragraphs of their Complaint.

196.    Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, are each "persons" within the meaning of O.C.G.A. § 16-14-4.

197.    The RK Trust is an "enterprise," with a clearly ascertainable structure and continuity of personnel (including its Co-Trustees), engaged in, and whose activities affect, the economy of this State and interstate commerce within the meaning of O.C.G.A. § 16-14-3(6) (the "RK Trust Enterprise").

198.    Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, are each associated with the RK Trust Enterprise.

199.    Furthermore, Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the

RK Trust, each conduct or participate in the conduct of the RK Trust Enterprise's affairs, in that each actively participates in the management and operation of the RK Trust Enterprise, and directs the affairs of the RK Trust Enterprise.

200.   For example, and by way of illustration only, Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, exercise discretionary control over the allocation, distribution, and placement of the RK Trust Enterprise's resources.

201.   Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, agreed to, and knowingly, intentionally, and willfully participated in the conduct of the RK Trust Enterprise's affairs through a pattern of racketeering activity, and for the unlawful purpose of defrauding Plaintiffs and others creditors of Defendant Roger Kahn.

202.   <u>Multiple Acts of Mail and Wire Fraud.</u>   Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, intentionally and willingly devised and participated in a scheme to defraud Defendant Roger Kahn's creditors, to fraudulently transfer Defendant Roger Kahn's assets to the RK Trust, and to obstruct his creditors' efforts to collect lawful debts, and knowingly and

intentionally used the interstate mails, in violation of 18 U.S.C. § 1341, and interstate wires, in violation of 18 U.S.C. § 1343, as integral and essential devices to advance, further, and facilitate that scheme.

203. For example, and without limitation, in furtherance of that scheme:

a. At times between late-2005 and 2007, Defendant Roger Kahn, upon information and belief, caused the United States mails and wires to be used to receive, send, execute, and/or transfer the Backdated Promissory Notes;

b. At times in 2005, Defendant Roger Kahn, upon information and belief, caused the United States mails and wires to be used to receive, send, and/or transmit personal financial statements to institutions concealing the "indebtedness" reflected by, *inter alia*, the Backdated Promissory Notes, on his schedule of assets and liabilities;

c. On March 6, 2007 and again on April 4, 2007, Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, caused to be mailed to Defendant Roger Kahn, through the United States mails and/or wires, two letters, purportedly on behalf of Defendants James

Union and William Gwaltney, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, calling the Backdated Promissory Notes "due";

d. On April 4, 2007, Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, upon information and belief, caused the United States mails and wires to be used to effect the Entity and Notes Payable Transfers described, *supra*, including, but not limited to, by communicating the ostensible transfer of the assets embodied in the Entity and Notes Payable Transfers to the RK Trust to officers, members, and directors of Defendants The Kahn Cattle Co., LLC, LS & RK #1, LLC, LS & RK #2, LLC, and Fairpoint, LLC, and to counsel and advisors involved in the transfers;

e. At times between September 2, 2008 and December 23, 2008, Defendant Roger Kahn, upon information and belief, caused the United States mails and wires to be used to effect the Account Clearing Transfers described, *supra*, including, but not limited to, by making and/or receiving certain payments included in the same, transmitting monies included in the same to third-parties, receiving

statements and other communications regarding the transfer of the monies included in the Account Clearing Transfers to third-parties, and communicating the existence of those Account Clearing Transfers to his advisors, accountants, and attorneys, and to officers, members, and directors of Defendants The Kahn Cattle Co., LLC and ASK Leasing, Inc.;

f.  On October 6, 2008 and October 17, 2008, Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, upon information and belief, caused the United States mails and wires to be used to effect the Real Property Transfers described, *supra*, including, but not limited to, by receiving, sending, executing, and/or recording documents reflecting the Real Property Transfers, communicating the existence of the Real Property Transfers to Defendant Roger Kahn's advisors, accountants, and attorneys, and to those of the RK Trust, and to paying, or causing to be paid, property taxes and related fees associated with the properties that were the subject of the Real Property Transfers;

g.  At times between April 4, 2007 and the present, Defendant Roger

Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, upon information and belief, caused the United States mails and wires to be used to effect the RK Trust Transfers described, *supra*, including, but not limited to, by making and/or receiving certain payments included in the same by use of United States wires and/or mails, transmitting monies included in the same, receiving statements and other communications regarding the transfer of the monies included in the RK Trust Transfers to third-parties, and communicating the existence of those RK Trust Transfers to Defendant Roger Kahn's advisors, accountants, and attorneys, and to those of the RK Trust; and

h. At times relevant to this action, Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, have, upon information and belief, relied on the United States mails and wires to communicate with advisors, accountants, and attorneys regarding the fraudulent transfers described herein, and to pay the fees of such advisors, accountants, and attorneys for advice rendered regarding

the same.

204.   <u>Bank Fraud.</u>   Defendant Roger Kahn further engaged in the racketeering act of bank fraud, in violation of 18 U.S.C. § 1344, in connection with his participation in the conduct of the affairs of the RK Trust Enterprise.

205.   Among other acts, Defendant Roger Kahn, in or about March 2005, caused a personal financial statement to be submitted to RBC Centura, a federally insured financial institution, reflecting that Defendant Roger Kahn enjoyed a net worth of $27,877,573.85.

206.   Defendant Roger Kahn knowingly and intentionally attempted to execute a scheme to defraud RBC Centura, a federally insured financial institution, into believing that he enjoyed the net worth so stated, when, according to other instruments executed by Defendant Roger Kahn, he in fact purported to have a negative net worth.

207.   In addition, Defendant Roger Kahn knowingly executed, or attempted to execute, a scheme to obtain funds from RBC Centura, a federally insured financial institution, based on the fraudulent representations contained in that financial statement.

208.   In particular, Defendant Kahn submitted the net worth statement to RBC Centura in or about 2005 to obtain a loan for his son-in-law, Gil Shir, to open a liquor store.

209.   The foregoing acts of mail fraud, wire fraud, and bank fraud constitute a pattern of racketeering activity within the meaning of O.C.G.A. § 16-14-3(8), are not isolated incidents, and were all undertaken in furtherance of schemes that are interrelated in that, *inter alia*:

> a.  they had the similar purposes of defrauding Defendant Roger Kahn's creditors, fraudulently transferring Defendant Roger Kahn's assets to the RK Trust, and obstructing Defendant Roger Kahn's creditors' efforts to collect lawful debts;

> b.  they had similar participants, *i.e.*, Defendants Roger Kahn, The Kahn Cattle Co., LLC, LS & RK #1, LLC, LS & RK #2, LLC, and ASK Leasing, Inc., and Defendants James Union and William Gwaltney, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, and similar victims, *i.e.*, Plaintiffs and other creditors of Defendant Roger Kahn; and

> c.  they had similar methods of commission and results.

210.   The foregoing racketeering acts also illustrate continuity and the threat of continuity, moreover, in that they have come to reflect Defendant Roger Kahn's and Defendants William W. Gwaltney and James Union's regular way of conducting Defendant Roger Kahn's affairs and those of the RK Trust over the past four years, that such acts have enabled the RK Trust to maintain continued custodianship over Defendant Roger Kahn's assets, and that these racketeering acts, and others like them, are ongoing, and Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, will continue to use the mails and wires to perpetrate schemes to defraud, unless and until Defendants are enjoined from continuing to perpetrate their unlawful schemes.

211.   By direct and proximate reason of Defendant Roger Kahn's and Defendants William W. Gwaltney and James Union's pattern of racketeering activity and the predicate acts it comprises, Plaintiffs have suffered an injury in an amount to be proven at trial.

212.   The injuries Plaintiffs have suffered as a result of Defendant Roger Kahn's and Defendants William W. Gwaltney and James Union's violation of O.C.G.A. § 16-14-4(b) are separate and distinct from the injuries that Plaintiffs suffered as a consequence of Defendants' individual predicate acts, in that they

have accomplished the near total deprivation of Plaintiffs' ability to collect on a

lawful judgment.

213.    Defendants The Kahn Cattle Co., LLC, LS & RK #1, LLC, LS & RK

#2, LLC, ASK Leasing, Inc. are liable for Defendant Roger Kahn's and Defendants

William W. Gwaltney and James Union's unlawful acts, because these Defendants

have ratified such unlawful acts by accepting the fruits and proceeds of Defendant

Roger Kahn's illegal activities after having notice and knowledge of the nature of

the same, and have knowingly allowed for the acquisition of assets in their names,

the transfer of interests in their organizations, and/or the transfer of their assets

brought about as a consequence of these racketeering activities.

214.    Unless otherwise restrained by this Court, moreover, Defendants will

continue their violations of the Georgia RICO Act, posing an immediate danger of

significant loss or damage to Plaintiffs, for which there will be no complete and

adequate remedy at law.

## COUNT TWELVE

### VIOLATION OF O.C.G.A § 16-14-4(b) OF THE GEORGIA RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

(Against All Defendants)

215.    Plaintiffs incorporate and reassert, as if fully set forth herein, all the

preceding paragraphs of their Complaint.

216. Defendants Roger Kahn, The Kahn Cattle Co., LLC, LS & RK #1, LLC, LS & RK #2, LLC, and ASK Leasing, Inc., and Defendants James Union and William Gwaltney, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, are each "persons" within the meaning of O.C.G.A. § 16-14-4.

217. Defendants Roger Kahn, The Kahn Cattle Co., LLC, LS & RK #1, LLC, LS & RK #2, LLC, and ASK Leasing, Inc., and Defendants James Union and William Gwaltney, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, form an "association in fact" enterprise within the meaning of O.C.G.A. § 16-14-3(6), which is engaged in, and whose activities affect, the economy of this State and interstate commerce (the "Roger Kahn Association Enterprise").

218. The Roger Kahn Association Enterprise has, and those persons it comprises have, the common goal of shielding Defendant Roger Kahn's assets from collection by lawful creditors, including Plaintiffs.

219. The Roger Kahn Association Enterprise enjoys a continuity in structure and personnel, and a cognizable structure distinct and apart from that inherent in the pattern of racketeering activity.

220. Defendants Roger Kahn, The Kahn Cattle Co., LLC, LS & RK #1, LLC, LS & RK #2, LLC, and ASK Leasing, Inc., and Defendants James Union and William Gwaltney, as Co-Trustees and/or Interim Co-Trustees of the RK Trust,

are each associated with the Roger Kahn Association Enterprise.

221.   Furthermore, Defendants Roger Kahn, The Kahn Cattle Co., LLC, LS & RK #1, LLC, LS & RK #2, LLC, and ASK Leasing, Inc., and Defendants James Union and William Gwaltney, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, each conduct or participate in the conduct of the Roger Kahn Association Enterprise's affairs, in that each actively participates in the management and operation of the Roger Kahn Association Enterprise, holds assets of the Roger Kahn Association Enterprise, and directs the affairs of the Roger Kahn Association Enterprise.

222.   For example, and by way of illustration only, Defendants Roger Kahn, The Kahn Cattle Co., LLC, LS & RK #1, LLC, LS & RK #2, LLC, and ASK Leasing, Inc., and Defendants James Union and William Gwaltney, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, exercise discretionary control over the allocation, distribution, and placement of the Roger Kahn Association Enterprise's resources.

223.   Defendants Roger Kahn, The Kahn Cattle Co., LLC, LS & RK #1, LLC, LS & RK #2, LLC, and ASK Leasing, Inc., and Defendants James Union and William Gwaltney, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, agreed to, and knowingly, intentionally, and willfully participated in the conduct

of the Roger Kahn Association Enterprise's affairs through a pattern of racketeering activity, and for the unlawful purpose of defrauding Plaintiffs and others creditors of Defendant Roger Kahn.

224. <u>Multiple Acts of Mail and Wire Fraud.</u> Defendants Roger Kahn, The Kahn Cattle Co., LLC, LS & RK #1, LLC, LS & RK #2, LLC, and ASK Leasing, Inc., and Defendants James Union and William Gwaltney, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, intentionally and willingly devised and participated in a scheme to defraud Defendant Roger Kahn's creditors, to fraudulently transfer Defendant Roger Kahn's assets to the RK Trust and other persons comprising the Roger Kahn Association Enterprise, and to obstruct his creditors' efforts to collect lawful debts, and knowingly and intentionally used the interstate mails, in violation of 18 U.S.C. § 1341, and interstate wires, in violation of 18 U.S.C. § 1343, as integral and essential devices to advance, further, and facilitate that scheme.

225. For example, and without limitation, in furtherance of that scheme:

    a. At times between late-2005 and 2007, Defendant Roger Kahn, upon information and belief, caused the United States mails and wires to be used to receive, send, execute, and/or transfer the Backdated Promissory Notes;

b. At times in 2005, Defendant Roger Kahn, upon information and belief, caused the United States mails and wires to be used to receive, send, and/or transmit personal financial statements to institutions concealing the "indebtedness" reflected by, *inter alia*, the Backdated Promissory Notes, on his schedule of assets and liabilities;

c. On March 6, 2007 and again on April 4, 2007, Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, caused to be mailed to Defendant Roger Kahn, through the United States mails and/or wires, two letters, purportedly on behalf of Defendants James Union and William Gwaltney, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, calling the Backdated Promissory Notes "due";

d. On April 4, 2007, Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, upon information and belief, caused the United States mails and wires to be used to effect the Entity and Notes Payable Transfers described, *supra*, including, but not limited

to, by communicating the ostensible transfer of the assets embodied in the Entity and Notes Payable Transfers to the RK Trust to officers, members, and directors of Defendants The Kahn Cattle Co., LLC, LS & RK #1, LLC, LS & RK #2, LLC, and Fairpoint, LLC, and to counsel and advisors involved in the transfers;

e. At times between September 2, 2008 and December 23, 2008, Defendant Roger Kahn, upon information and belief, caused the United States mails and wires to be used to effect the Account Clearing Transfers described, *supra*, including, but not limited to, by making and/or receiving certain payments included in the same, transmitting monies included in the same to third-parties, receiving statements and other communications regarding the transfer of the monies included in the Account Clearing Transfers to third-parties, and communicating the existence of those Account Clearing Transfers to his advisors, accountants, and attorneys, and to officers, members, and directors of Defendants The Kahn Cattle Co., LLC and ASK Leasing, Inc.;

f. On October 6, 2008 and October 17, 2008, Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees

and/or Interim Co-Trustees of the RK Trust, upon information and belief, caused the United States mails and wires to be used to effect the Real Property Transfers described, *supra*, including, but not limited to, by receiving, sending, executing, and/or recording documents reflecting the Real Property Transfers, communicating the existence of the Real Property Transfers to Defendant Roger Kahn's advisors, accountants, and attorneys, and to those of the RK Trust, and to paying, or causing to be paid, property taxes and related fees associated with the properties that were the subject of the Real Property Transfers;

g. At times between April 4, 2007 and the present, Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, upon information and belief, caused the United States mails and wires to be used to effect the RK Trust Transfers described, *supra*, including, but not limited to, by making and/or receiving certain payments included in the same by use of United States wires and/or mails, transmitting monies included in the same, receiving statements and other communications regarding the transfer of the monies included

in the RK Trust Transfers to third-parties, and communicating the existence of those RK Trust Transfers to Defendant Roger Kahn's advisors, accountants, and attorneys, and to those of the RK Trust; and

h.  At times relevant to this action, Defendant Roger Kahn and Defendants William W. Gwaltney and James Union, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, have, upon information and belief, relied on the United States mails and wires to communicate with advisors, accountants, and attorneys regarding the fraudulent transfers described herein, and to pay the fees of such advisors, accountants, and attorneys for advice rendered regarding the same.

226.   Bank Fraud.   Defendant Roger Kahn further engaged in the racketeering act of bank fraud, in violation of 18 U.S.C. § 1344, in connection with his participation in the conduct of the affairs of the Roger Kahn Association Enterprise.

227.   Among other acts, Defendant Roger Kahn, in or about March 2005, caused a personal financial statement to be submitted to RBC Centura, a federally

insured financial institution, reflecting that Defendant Roger Kahn enjoyed a net worth of $27,877,573.85.

228.   Defendant Roger Kahn knowingly and intentionally attempted to execute a scheme to defraud RBC Centura, a federally insured financial institution, into believing that he enjoyed the net worth so stated, when, according to other instruments executed by Defendant Roger Kahn, he in fact purported to have a negative net worth.

229.   In addition, Defendant Roger Kahn knowingly executed, or attempted to execute, a scheme to obtain funds from RBC Centura, a federally insured financial institution, based on the fraudulent representations contained in that financial statement.

230.   In particular, Defendant Kahn submitted the net worth statement to RBC Centura in or about 2005 to obtain a loan for his son-in-law, Gil Shir, to open a liquor store.

231.   The foregoing acts of mail fraud, wire fraud, and bank fraud constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

232.   The foregoing acts of mail fraud, wire fraud, and bank fraud constitute a pattern of racketeering activity within the meaning of O.C.G.A. § 16-14-

3(8), are not isolated incidents, and were all undertaken in furtherance of schemes that are interrelated in that, *inter alia*:

    a.  they had the similar purposes of defrauding Defendant Roger Kahn's creditors, fraudulently transferring Defendant Roger Kahn's assets to the RK Trust, and obstructing Defendant Roger Kahn's creditors' efforts to collect lawful debts;

    b.  they had similar participants, *i.e.*, Defendants Roger Kahn, The Kahn Cattle Co., LLC, LS & RK #1, LLC, LS & RK #2, LLC, and ASK Leasing, Inc., and Defendants James Union and William Gwaltney, as Co-Trustees and/or Interim Co-Trustees of the RK Trust, and similar victims, *i.e.*, Plaintiffs and other creditors of Defendant Roger Kahn; and

    c.  they had similar methods of commission and results.

233.    The foregoing racketeering acts also illustrate continuity and the threat of continuity, moreover, in that they have come to reflect Defendants' regular way of conducting Defendant Roger Kahn's affairs and those of the Roger Kahn Association Enterprise over the past four years, that such acts have enabled the Roger Kahn Association Enterprise to maintain continued custodianship over Defendant Roger Kahn's assets, and that these racketeering acts, and others like

them, are ongoing, and Defendants will continue to use the mails and wires to perpetrate schemes to defraud, unless and until Defendants are enjoined from continuing to perpetrate their unlawful schemes.

234.   By direct and proximate reason of Defendants' pattern of racketeering activity and the predicate acts it comprises, Plaintiffs have suffered an injury in an amount to be proven at trial.

235.   The injuries Plaintiffs have suffered as a result of Defendants' violation of O.C.G.A. § 16-14-4(b) are separate and distinct from the injuries that Plaintiffs suffered as a consequence of Defendants' individual predicate acts, in that they have accomplished the near total deprivation of Plaintiffs' ability to collect on a lawful judgment.

236.   Unless otherwise restrained by this Court, moreover, Defendants will continue their violations of the Georgia RICO Act, posing an immediate danger of significant loss or damage to Plaintiffs, for which there will be no complete and adequate remedy at law.

## COUNT TWELVE

### VIOLATION OF O.C.G.A § 16-14-4(c) OF THE GEORGIA RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

(Against All Defendants)

237.   Plaintiffs incorporate and reassert, as if fully set forth herein, all the

preceding paragraphs of their Complaint.

238.   As set forth above, Defendants agreed and conspired to violate O.C.G.A. § 16-14-4(a) and O.C.G.A. § 16-14-4(b).  Specifically, Defendants agreed and conspired (a) to permit Defendant Roger Kahn to acquire and maintain an interest in and control over the RK Trust Enterprise through a pattern of racketeering activity involving mail fraud, in violation of 18 U.S.C. § 1341, and wire fraud, in violation of 18 U.S.C. § 1343; and (b) to conduct and participate in the conduct of the affairs of the RK Trust Enterprise and/or the Roger Kahn Association Enterprise through a pattern of racketeering activity involving mail fraud, in violation of 18 U.S.C. § 1341, wire fraud, in violation of 18 U.S.C. § 1343, and bank fraud, in violation of 18 U.S.C. § 1344.

239.   Defendants each knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes describe above.  That conduct constitutes a conspiracy to violate O.C.G.A. § 16-14-4(a) and O.C.G.A. § 16-14-4(b), in violation of O.C.G.A. § 16-14-4(c).

240.   As a direct and proximate result of Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of O.C.G.A. § 16-14-4(c), Plaintiffs have suffered an injury in an amount to be proven at trial.

## COUNT THIRTEEN

## DECLARATORY RELIEF REGARDING THE INVALIDITY OF THE RK TRUST SPENDTHRIFT PROVISION

### (Against All Defendants)

241.    Plaintiffs incorporate and reassert, as if fully set forth herein, all the preceding paragraphs of their Complaint.

242.    Since the RK Trust's inception, and particularly since 1992, Defendant Roger Kahn has exercised *de facto* exclusive and effective control over the RK Trust, having such dominion over his Co-Trustees (or appointed Interim Co-Trustees) that he alone could direct distributions from the RK Trust at times and in the amounts he deemed appropriate.

243.    Defendant Roger Kahn's control over the RK Trust has been such that the nominal trustees (other than himself) exercised no meaningful control over, and could impose no meaningful restrictions on, distribution of trust assets, and he has been, in practice, permitted to use trust assets for any purpose he deemed fit.

244.    For example, and without limitation, between December 31, 1998 and December 31, 2003, Defendant Roger Kahn caused the RK Trust to make over $35 million in distributions to him *above* the $4.9 million in distributions required to be paid under governing trust documents, and, since April 4, 2007, through approximately four hundred discrete transactions, has taken over $4,300,000

- 103 -

from the RK Trust for his own personal use and benefit.  Some of these transactions were for amounts just over ten dollars ($10.00)—suggesting, strongly, that Defendant Roger Kahn has effectively turned the RK Trust into his personal checking account.

245.   Such excessive control renders the spendthrift clause of the RK Trust invalid as a matter of law.

246.   Notwithstanding the foregoing, Defendants maintain the position that the assets of the RK Trust are immune from Plaintiffs' collection efforts.

247.   There is accordingly an actual controversy between Plaintiffs and Defendants regarding the parties' rights and obligations *vis-à-vis* the assets of the RK Trust within the meaning of 28 U.S.C. § 2201.

248.   Plaintiffs are entitled to a declaration by this Court that the spendthrift provision of the RK Trust is invalid, and that its assets are reachable by Plaintiffs to satisfy the Judgment entered against Defendant Roger Kahn.

### COUNT FOURTEEN

### DECLARATORY RELIEF REGARDING THE INEFFECTIVENESS OF THE RK TRUST SPENDTHRIFT PROVISION TO PROTECT ASSETS PLACED INTO THE RK TRUST BY DEFENDANT ROGER KAHN

(Against All Defendants)

249.   Plaintiffs incorporate and reassert, as if fully set forth herein, all the

preceding paragraphs of their Complaint.

250.   At various times since 2007, Defendant Roger Kahn has purported to place certain assets previously owned by him, as an individual, into the RK Trust.

251.   With respect to those asset transfers, Defendant Roger Kahn has effectively become a "settlor" of the RK Trust.

252.   Because Georgia law proscribes self-settling spendthrift trusts, the spendthrift provision of the RK Trust is ineffective as to those assets placed into the RK Trust by Defendant Roger Kahn, or to the proceeds the RK Trust obtained from the sale or transfer of those assets.

253.   Notwithstanding the foregoing, Defendants maintain the position that the assets of the RK Trust are immune from Plaintiffs' collection efforts.

254.   There is accordingly an actual controversy between Plaintiffs and Defendants regarding the parties' rights and obligations *vis-à-vis* the assets of the RK Trust placed into the RK Trust by Defendant Roger Kahn within the meaning of 28 U.S.C. § 2201.

255.   Plaintiffs are entitled to a declaration by this Court that the spendthrift provision of the RK Trust is ineffective to shield assets placed into the trust by Defendant Roger Kahn, as well as to the proceeds the RK Trust obtained from the sale or transfer of those assets, and that such assets and the proceeds derived

therefrom are reachable by Plaintiffs to satisfy the Judgment entered against Defendant Roger Kahn.

### COUNT FIFTEEN

### DECLARATORY RELIEF REGARDING THE INVALIDITY OF THE RK TRUST SPENDTHRIFT PROVISION AS TO DISTRIBUTIONS MADE TO DEFENDANT ROGER KAHN, OR FOR HIS BENEFIT

(Against All Defendants)

256.    Plaintiffs incorporate and reassert, as if fully set forth herein, all the preceding paragraphs of their Complaint.

257.    Plaintiffs' Judgment against Defendant Roger Kahn, and the verdict upon which it was based, was predicated upon Defendant Roger Kahn's fraud.

258.    Pursuant to O.C.G.A. § 53-12-28(c)(1), a spendthrift provision in a trust is not valid as to distributions made to or on behalf of a beneficiary with respect to claims of creditors based on tort judgments.

259.    Notwithstanding the foregoing, Defendants maintain the position that the assets of the RK Trust, and distributions therefrom, are immune from Plaintiffs' collection efforts.

260.    There is accordingly an actual controversy between Plaintiffs and Defendants regarding the parties' rights and obligations *vis-à-vis* any distributions made by the RK Trust to or on behalf of Defendant Roger Kahn within the meaning

of 28 U.S.C. § 2201.

261.    Plaintiffs are entitled to a declaration by this Court that, with respect to Plaintiffs' efforts to collect the Judgment, the spendthrift provision of the RK Trust is not valid as to any distributions made to or on behalf of Defendant Roger Kahn, and that the same are subject to garnishment, and any other form of collection, permitted by law.

### COUNT SIXTEEN

### PUNITIVE DAMAGES

(Against Defendants)

262.    Plaintiffs incorporate and reassert, as if fully set forth herein, all the preceding paragraphs of their Complaint.

263.    Defendants' actions have demonstrated willful misconduct, malice, fraud, moral turpitude, wantonness, oppression, and that entire disregard for Plaintiffs' rights which would raise the presumption of conscious indifference to consequences, and were undertaken with purpose and specific intent to cause Plaintiffs harm.  In addition, such actions were undertaken with actual knowledge of the wrongfulness of the same and the high probability that injury or damage to Plaintiffs would result.

264.    Defendants each are personally guilty of the acts of intentional

misconduct described herein.

265.   Accordingly, Plaintiffs are entitled to recover, against all Defendants to this action, punitive damages.

266.   Plaintiffs are additionally entitled to punitive damages pursuant to O.C.G.A. § 16-14-6(a).

## COUNT SEVENTEEN

## ATTORNEYS' FEES

### (Against All Defendants)

267.   Plaintiffs incorporate and reassert, as if fully set forth herein, all the preceding paragraphs of their Complaint.

268.   Plaintiffs are entitled to recovery of their attorneys' fees in all trial and appellate courts and all costs of investigation and litigation which they have reasonably incurred pursuant to O.C.G.A. § 16-14-6(c).

269.   Plaintiffs are additionally entitled to recovery of their attorneys' fees and court costs pursuant to 18 U.S.C. § 1964(c).

270.   What is more, Defendants have acted in bad faith, have been stubbornly litigious, and have caused Plaintiffs unnecessary trouble and expense. Accordingly, Plaintiffs are entitled to recover their expenses of litigation, including their attorneys' fees and expenses, pursuant to O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand a jury trial on all issues so triable and respectfully request:

a. That judgment be entered in favor of Plaintiffs and against each and every Defendant, jointly and severally, on each and every Count of the Complaint, in an amount not less than $10,582,815.00;

b. That the Court avoid the fraudulent transfers of the assets made, accepted, and/or ratified by Defendants in violation of the Georgia Uniform Fraudulent Transfers Act and the Florida Uniform Fraudulent Transfers Act, including, but not limited to, by ordering Defendants James Union and William Gwaltney, as Co-Trustees of the RK Trust, to deed the properties affected by the Real Property Transfers back to Defendant Roger Kahn, to transfer the interests and notes embodied in the Entity and Notes Receivable Transfers back to Defendant Roger Kahn, and to cancel the Backdated Promissory Notes;

c. That the Court impose a constructive trust over any and all fraudulently transferred assets, as well as all proceeds, consideration, and benefits derived by Defendants from their sale or transfer;

d. That the Court attach all fraudulently transferred assets presently residing in the RK Trust, and all proceeds, consideration, and benefits derived therefrom, and other property held by the RK Trust, in accordance with applicable law;

e. That the Court enter judgment in favor of Plaintiffs and against each and every Defendant on each and every Count of the Complaint, as applicable, awarding the amount of actual, consequential, and/or compensatory damages proven by Plaintiffs;

f. That the Court further award Plaintiffs such punitive, exemplary, and/or treble damages against each and every Defendant, as applicable, for their wrongful conduct described herein to the extent allowed by law;

g. That the Court award Plaintiffs their costs and attorneys' fees incurred in this action;

h. That the Court declare (a) that the asset transfers and obligations described herein are fraudulent transfers within the meaning of the Uniform Fraudulent Transfers Act; (b) that the spendthrift provision of the RK Trust is invalid, and that the RK Trust's assets are reachable by Plaintiffs to satisfy the Judgment entered against Defendant Roger

Kahn; (c) that the spendthrift provision of the RK Trust is ineffective to shield assets placed into the trust by Defendant Roger Kahn, as well as to the proceeds the RK Trust obtained from the sale or transfer of those assets, and that such assets and the proceeds derived therefrom are reachable by Plaintiffs to satisfy the Judgment entered against Defendant Roger Kahn; and (d) that, with respect to Plaintiffs' efforts to collect the Judgment, the spendthrift provision of the RK Trust is not valid as to any distributions made to or on behalf of Defendant Roger Kahn, and that the same are subject to garnishment, and any other form of collection, permitted by law;

i. That Defendants be temporarily, preliminarily, and permanently enjoined from engaging in any further fraudulent transfers; from engaging in any transfers of assets in the RK Trust that are the subject of this action, as well as any and all proceeds, consideration, and benefits derived by Defendants from their sale or transfer; and from otherwise engaging in any further transfers of assets from the RK Trust pending the resolution of this civil action;

j. That the Court award Plaintiffs pre- and post-judgment interest at the legal rate; and

k. That the Court grant such other and further relief as this Court deems appropriate, just and equitable.

Respectfully submitted this __4__ th day of December, 2009.

ARNALL GOLDEN GREGORY LLP

Allen I. Hirsch
Georgia Bar No. 357100
allen.hirsch@agg.com
Edward A. Marshall
Georgia Bar No. 471533
edward.marshall@agg.com
Jared M. Lina
Georgia Bar No. 191099
jared.lina@agg.com
171 17th Street NW
Suite 2100
Atlanta, Georgia 30363
404.873.8536 (telephone)
404.873.8537 (facsimile)

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

The undersigned attorney herby certifies, pursuant to L.R. 5.1, NDGa., that the foregoing Complaint for Reformation and Injunctive Relief was prepared in accordance with L.R. 5.1, NDGa. using Book Antiqua font, 13 point.

Edward A. Marshall
Georgia Bar No. 471533
edward.marshall@agg.com

2709078v2                                      - 113 -